KEMP, Respondent, v. SAN ANTONIO CATERING COMPANY and PARKVIEW REALTY AND IMPROVEMENT COMPANY, Appellants.

St. Louis Court of Appeals, April 10, 1906.

1. **LANDLORD AND TENANT: Breach of Covenant by Landlord: Obligation of Tenant to Pay Rent.** The breach by a landlord of of a duty to his tenant does not destroy his right to collect rent from the tenant, where the tenant retains possession instead of seeking to rescind by surrender of possession on account of the breach; the tenant's remedy in such case is an action for damages for the breach.

2. ———: **Receivers: Equity Jurisdiction.** Where a receiver was appointed on the petition of a tenant in an action against his sub-tenants for an accounting, and the original lessor thereby prevented from collecting the rent from the tenant by garnishment of the subtenants or other legal process, it was the duty of the court of equity, on the intervention of the original lessor, to preserve the rents collected from the subtenants for his benefit.

3. ———: **Subtenants: Prior Claim of Landlord on Rents.** Where a receiver in charge of real estate collected rents from subtenants, the original landlord was in equity entitled to the fund so collected in discharge of the rent due him as against the original lessee and those claiming under him.

4. ———: ———: ———: **Removal of Improvements.** The fact that by the terms of the lease, the tenant had a right to remove the building at the end of the term, did not affect the landlord's right to the rents collected from the subtenants.

5. ———: **Equity Jurisdiction: Judgment Creditor.** Where, in an action by a tenant against his subtenants for an accounting, in which action a receiver was appointed to collect the rents, the landlord interpleaded on account of rents due him from the original tenant and it was shown that the original tenant was insolvent and the landlord's claim was undisputed, the landlord could maintain his right in equity to the fund in the receiver's hands without having first reduced his claim to judgment.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*)'.

*J. Hugo Grimm* for San Antonio Catering Company.

(1) Neither the petition nor amended petition stated a cause of action such as gave jurisdiction to the court, either to appoint a receiver or to take charge of the fund paid in by the defendant catering company. Miller Bros. v. Perkins, 154 Mo. 638, 55 S. W. 874; State ex rel. v. Ross, 122 Mo. 435, 25 S. W. 947; Rees v. Andrews, 169 Mo. 192, 69 S. W. 4; Beach on Receivers, sec. 106; Smith on Receivers, sec. 4. (2) The court could obtain jurisdiction of the fund in this case only under the bill of interpleader incorporated in the answer of defendant catering company. That it had the right to incorporate such bill in its answer is clear. Roselle v. Bank, 119 Mo. 84, 24 S. W. 744; Arn v. Arn., 81 Mo. App. 139-140; State ex rel. v. Kumpff, 62 Mo. App. 332; Atkinson v. Carter, 101 Mo. App. 483, 74 S. W. 502. (3) The court should have dismissed plaintiff's bill, sustained defendant's bill of interpleader, and made an order on the different claimants to interpleader for the fund. It had no authority to permit plaintiff's amended petition to be treated as a bill of interpleader, since a creditor cannot file such a bill. Duke v. Duke, 93 Mo. App. 244.

*Bland & Cave* for Parkview Realty and Improvement Company.

(1) The general rule requiring the creditor's claim to be reduced to judgment before resorting to equity has no application to creditors who have a lien, either legal or equitable. Davidson v. Dockery,

179 Mo. 687, 78 S. W. 624; Reyburn v. Mitchell, 106 Mo. 365; 16 S. W. 592; White v. University Land Co., 49 Mo. App. 450; Burnham, Munger & Co. v. Smith, 82 Mo. App. 35.  (2)  Rent, in the eyes of a court of equity, seems properly to be a trust or charge upon the estate; and the lessee is bound, at least in good conscience, not to take the profits without a due discharge of the rent out of them.  And where the lessee is insolvent and unable to pay the rent, a court of equity will relieve the lessor and direct the payment of the rent of the undertenant to the lessor upon a bill, making the lessee and the undertenant parties.  I Story's Eq. Jur. (13 Ed.), sec. 687; McAdam on Landlord and Tenant, page 657; Taylor on Landlords and Tenants (9 Ed.), sec. 659; Glasner v. Fredericks, 73 Mo. App. 429; Riggs v. Whitney, 15 Abb. Pr. Rep. 388; Otis v. Conway, 114 N. Y. 13. (3)  (a)  While the building erected on the lot was, we take it, for the purpose of removal, as between the Parkview Company and Kemp personalty, this can in no way affect the rights of the parties in this action.  (b) Strictly speaking, rent cannot be reserved out of chattels personal, and if such chattels are demised with land, at an entire rent, the rent issues out of the land only. Fay v. Holloran, 35 Barb. 295; Matter of Strickland, 10 N. Y. Misc. 486; Armstrong v. Cummings, 58 How. Pr. Rep. 331; Sutliff v. Atwood, 15 Ohio (N. S.) 186.

*Davidson & Russell* for respondent.

(1)  A building placed on leased ground under a contract that the same shall be removed therefrom within a specified time by the party placing it there, is personal property and does not become a part of the ground. Atkinson v. Dixon, 96 Mo. 588, 10 S. W. 162; Ins. Co. v. Tillery, 152 Mo. 421, 54 S. W. 220; Gregg v. Railroad, 48 Mo. App. 444; Hines v. Ament, 43 Mo. 298; Lowensberg v. Bernd, 47 Mo. 297; Hunt v. Railroad, 76 Mo.

155; Brown v. Turner, 113 Mo. 27, 20 S. W. 660. (2) Before a bill in equity can be maintained for the collection of a claim for rent in arrears, such claim must first be reduced to judgment by an action at law. Kent v. Curtis, 4 Mo. App. 121; Iron Co. v. McDonald, 61 Mo. App. 569; Clark v. Bank, 57 Mo. App. 282; Thias v. Siener, 103 Mo. 322, 15 S. W. 772; Mullen v. Hewitt, 103 Mo. 650, 15 S. W. 924; Humphreys v. Milling Co., 98 Mo. 548, 10 S. W. 140; Reyburn v. Mitchell, 106 Mo. 377, 16 S. W. 592. (3) A claim for rent in arrears is simply a chose in action and occupies the same plane as any other chose in action, except that attachment is specifically provided by statute for its collection. Culverhouse v. Worts, 32 Mo. App. 419. (4) That defendant Parkview Company had an adequate remedy at law in attachment, provided by statute for the collection of rent in arrears, and it must be exhausted before an equitable proceeding could be maintained for that purpose. R. S. 1899, sec. 4123.

STATEMENT. — This is an equitable proceeding in which plaintiff seeks an accounting against the San Antonio Catering Company and other defendants, the appointment of a receiver to conduct the business of said company, and an injunction against the transfer of the business by said company and the other defendants to any one else, and against the removal of its books of account used in connection with the business.

The facts of the case are rather complicated and require to be stated with some detail. The Parkview Realty & Improvement Company owned a lot on the northwest corner of DeBaliviere and Waterman avenues in the city of St. Louis, on which it granted a lease to Gilbert P. Drew for a term to begin February 16, 1904, and to continue until thirty days after the close of the Louisiana Purchase Exposition. Drew was to pay $3,000 as rent for the entire term, of which $500 was to

be paid on the execution of the lease and the remainder in installments of $500 each on the first day of each month, beginning with May first, until the whole sum was paid. Plaintiff Kemp was a baker, doing business in the city of St. Louis, and desirous of establishing a bakery near the World's Fair. To get a place for a bakery he paid Drew $2,500 for the north-half of the ground floor of the building put on the premises aforesaid. Afterwards Kemp made a contract with Drew, by which the former agreed to advance to the later $1,650, with which Drew undertook to erect a second story on a building which he had already put on the ground leased from the Parkview Company. Said second story was to be conducted as a hotel and rooming house for the profit of Drew and Kemp. It was to contain twenty-six rooms and to be furnished by Drew. This contract was made with the partnership firm of Drew & Quinlan, but for some reason not apparent from the record, Quinlan cuts no figure in the present case. The contract was dated April 1, 1904. Kemp paid the $1,650 to Drew, but the latter did nothing toward furnishing the hotel and afterwards told Kemp he was unable to carry out his contract. On June 1, 1904, Drew, by a written instrument, assigned to Kemp all his interest in this firm of Drew & Quinlan and in other property thus designated:

"A certain two-story business and hotel building, situated and being on a lot of ground fronting sixty feet on DeBaliviere avenue and by a depth westwardly between parallel lines one hundred feet, and bounded on the south by Waterman avenue, and known as the Palace Hotel building, in the city of St. Louis, Missouri, together with his leasehold interest and all leases on said buildings and all portions thereof, and all rents that have accrued, or may hereafter accrue, under said lease. To have and to hold the same unto him, the said J. R. Kemp, his heirs, executors, administrators and assigns."

Kemp testified that the first arangement between him and Drew was that the former was to be repaid the $1,650 advanced by him with which to construct the second story of the building, and after that sum was repaid, the profits derived from the use of the second story as a hotel and rooming-house should be equally divided between them. When Drew failed to carry out his contract he left St. Louis and his whereabouts are unknown. At the time of Drew's departure, he was in default to the Parkview Company in the sum of $1,000 for installments of rent under the lease. In May, 1904, Drew, Edward Quinlan (a member of the firm of Drew & Quinlan) the plaintiff Kemp and one H. J. Gobrecht, who had some interest in the connection with the other persons named, executed what purports to be a lease of said second story to defendants J. H. Earp and E. L. Webb, for a term to end December 1, 1904, should the Louisiana Purchase Exposition then close, or until the close of the Exposition. Parts of said lease which need to be noticed are as follows:

"For the use and rent thereof, the said parties of the second part hereby promise to completely furnish by May 20th, all of the rooms of the second story hereby leased, and to operate and conduct the premises herein leased as a hotel, for the period that the premises are leased, and the parties of the second part further promise to pay to the said parties of the first part or their order, each Monday, fifty per cent of the gross receipts received by them from the conduct of the said premises, as a hotel during the said period; that they will not sub-let or allow any other tenant to come in with or under them, without the written consent of the parties of the first part, their heirs or assigns, excepting hotel guests; that but one room in the premises herein mentioned shall be occupied by a housekeeper or servants, and that no relatives of the parties of the second part, or friends, shall be allowed to occupy the premises at a reduced

rate, and that all of the rates made by the parties of the second part shall meet with the approval of the parties of the first part; that they will take good care of the building and premises, and keep them free from filth, from danger of fire, or any nuisance, and from all uses forbidden in any fire insurance policy issued thereon, and protect, defend and indemnify the said parties of the first part from all damages and charges for such; that the premises shall be kept clean, fairly treated and left so; that in default of the payment of any share in the installment of profits as aforesaid, they will, if requested by the parties of the first part, quit and render to them the peaceable possession thereof, and finally, at the end of the term they will surrender to the said parties of the first part, their heirs or assigns, the peaceable possession of the said premises, with all keys, bolts. latches and repairs, if any, in as good condition as they received the same, the usual wear and use and providential destruction, or destruction by fire excepted."

Afterwards the San Antonio Catering Company was incorporated and Earp and Webb, who were among the incorporators, assigned the above lease to that company. The defendants, Ada Lee and Mary Webb, had some interest in the Catering Company and for that reason were made defendants to this action. The lessors consented in writing to the assignment. After Drew had defaulted in the payments on his rent to the Parkview Company and the performance of his contract with Kemp, to furnish the second-story rooms, operate the same as a hotel and divide the profits with Kemp, and had assigned his rights to the latter, the Parkview Company executed a lease to Kemp on the lot originally leased to Drew. This instrument was dated June 7, 1904. The term was to begin on that date and continue until thirty days after the close of the Louisiana Purchase Exposition, and Kemp was to pay $2,500 for the term in installments, of which $500 was to be

paid on the date of the lease and $500 more the first day of each month, beginning with July, until the whole sum was paid. In other respects the lease was like the one made to Drew with the exception of this clause:

"Subject, nevertheless, to the lien of existing recorded encumbrances, and subject further to any claims which Gilbert P. Drew or any claiming by, through or under him make, or may make under or by virtue of that certain lease heretofore made by the lessor to said Drew, under date of February 16, 1904, or which said Drew or any one claiming by, through or under him makes or may make to or with respect to the building on the demised premises or any part, appurtenances or fixtures thereof; subject also to any claims or liens which have been or may be made or advanced against said building, or any part thereof by any person, persons, firms or corporations on account of having done or furnished any labor, work or material on or with respect to said building."

For some reason on June 7th Kemp, as one party, and Earp & Webb as the other, entered into another contract by which Kemp rented to Earp & Webb, for the purpose of a hotel, the second story of the building aforesaid. The provisions of this contract were identical with those quoted from the lease made by Kemp, Drew, Quinlan and Gobrecht to Earp & Webb in May, 1904. In this contract Earp & Webb virtually agreed to do what Drew had agreed to do, namely: operate the rooming house and pay Kemp fifty per cent of the gross receipts. It seems that Earp & Webb and the San Antonio Catering Company carried out their agreement with Kemp only until June or July, when they ceased to make payments to him of half the gross receipts. This change of conduct on their part was due to certain litigation which had arisen between Drew and his creditors. One August Winkel instituted an action in the circuit court of the city of St. Louis against Drew and Quinlan for about

$3,000 for the construction of the building on the lot. A writ of attachment was issued in that action and levied on all the right of Drew & Quinlan in the leasehold granted by the Parkview Company to Drew. Afterwards George W. Lubke was appointed receiver in said cause to take charge of the leasehold property and was authorized to institute suits against persons in possession of the premises. Lubke thereafter notified Earp & Webb and the Catering Company that he claimed all the rights of Drew & Quinlan in the premises, right to possession of the premises and damages against said defendants for unlawfully withholding possession of the second story. Afterwards on June 14th, Lubke, as receiver, brought suit against the San Antonio Catering Company before a justice of the peace for unlawfully detaining the second story. When the Catering Company ceased to pay rent to Kemp, the latter brought two suits against it before a justice of the peace for possession of the premises under the Landlord and Tenant Act. Kemp claimed that Drew's lease had been assigned to him and that Earp & Webb and the Catering Company were his tenants and Lubke was not entitled to possession of the premises or any rents as receiver in the case of Winkel against Drew. Lubke denied the assignment of Drew's lease to Kemp, denied the validity of the lease of the Parkview Realty Company to Kemp, and asserted that as receiver of Drew he was entitled to the premises and to damages for the detention thereof. The San Antonio Catering Company and Earp & Webb further stated that they were threatened with actions by two parties on the same liability and asked leave to pay fifty per cent of the gross receipts accruing under their contract with Kemp into court, to be paid by the court to the party found to be entitled to it. The court ordered this done and thereafter those occupants of the premises paid monthly into court fifty per cent of their gross receipts until the sum of $1,430.93 had accumulated. This sum is

the real subject-matter of the present controversy. As far as Earp & Webb, the Catering Company, and other parties interested with that company are concerned, their only contention is that the circuit court should have made them a reasonable allowance for the costs incurred in answering, as they stood in the position of interpleaders and had no real interest in the present controversy.

George W. Lubke was made a party and asserted a claim to the fund as receiver of the Drew leasehold.

The Parkview Realty & Improvement Company, by leave of court, entered its appearance and filed an interplea in which it asserted a claim for the entire fund on the ground that both the lessees, Drew and Kemp, were insolvent; that under the lease made by the Parkview Company to each of them there was still due said company $1,650; that the San Antonio Catering Company and the defendants associated with it as occupants of the premises, were subtenants of a portion of the leasehold executed by the Parkview Company first to Drew and then to Kemp, and the money said Catering Company had paid into court was really rent for the second story of said premises; that in equity and good conscience neither Drew nor Kemp ought to be permitted to take the rents paid by the subtenants without first discharging the claim of the original landlord, the Parkview Company; and that the creditors of Drew and Kemp have no moral or equitable claim to the rents of the subtenants until after the original landlord's claim for rent is satisfied.

It seems that on November 1, 1904, Kemp had assigned $650 of the sums paid into court to B. O. Davidson. In its interplea the Parkview Company avers that this assignment should not in equity and good conscience stand against its claim, for the reason that it was made without consideration; that at the time of said assignment, Davidson knew Kemp was in arrears for the rent

and could, therefore, acquire no valid claim to the fund as against the Parkview Company.

The reply to the interplea of the Parkview Company avers that the lease to Drew provided that Drew might remove from the ground all buildings placed thereon by him within a certain time named in the lease; that Drew took possession of the premises and constructed thereon a temporary two-story building; that on April 1st Kemp bought the top or second story and took possession and has ever since been the owner of the same. The reply then alleges the contract between Kemp and Earp & Webb and the assignment of it to the San Antonio Catering Company and that the fund now in court, is composed of the gross receipts accruing from the operation of the hotel.

It appears that Lubke's claim as receiver to the fund was not pressed at the trial, but abandoned.

The court denied the application of the San Antonio Catering Company for an allowance for attorney's fees and expenses, and, on the issues joined between the plaintiff and the Parkview Company, found in favor of plaintiff and also in favor of plaintiff on the interplea of George W. Lubke, receiver. The court further found that plaintiff's bill should be dismissed as against the defendants J. H. Earp, E. L. Webb, Ada Lee and Mary A. Webb; that there is due to plaintiff from the San Antonio Catering Company the sum of $1,430.93, which sum it adjudged should be paid to plaintiff or his attorney of record, after deducting court costs. From that judgment the Parkview Company and the San Antonio Catering Company appealed.

GOODE, J. (after stating the facts).—Plaintiff was the lessor of the San Antonio Catering Company and was, of course, entitled to be paid the rent said company agreed to pay for the premises leased; that is to say, fifty per cent of the receipts. It follows that

the fund which the Catering Company paid into court as rent under its contract with plaintiff, should be awarded to the latter unless some one else has shown a superior right to it. The only party contesting plaintiff's right is the Parkview Realty & Improvement Company, which claims the fund in discharge of the ground rent due it from plaintiff. It appears from the petition in the case that plaintiff himself, at the inception of the litigation recognized the justness of the Parkview Company's claim; for he alleged as an element of his case, that he was compelled to depend on his portion of the receipts accruing from the operation of the hotel leased to the Catering Company, to enable him to pay the ground rent due under his lease from the Parkview Company, and that by reason of the Catering Company's having withheld the rent, he had been compelled to permit $650 of the rent he owed the Parkview Company to fall into arrears. The petition further alleged that under the terms of its lease to plaintiff, the Parkview Company, on account of such default, might re-enter and take possession of the premises and forfeit plaintiff's lease, which it would do if the rent was not paid; thereby inflicting irreparable injury on plaintiff. In his testimony plaintiff swore there was a balance of $1,650 for rent due the Parkview Company at the time of the trial, and that his object in bringing this suit was to get what his undertenant owed him in order that he might pay what he owed the Parkview Company. When asked why he had changed his mind about paying it, plaintiff answered that the Parkview Company had turned against him by bringing in the old lease which they had agreed to cancel. The excuse given is a flimsy one. The conversations in regard to the cancellation of the original lease to Drew occurred anterior to the lease made to plaintiff by the Parkview Company, and the latter lease was made subject to any claims which Drew, or those claiming under him might make by virtue of the lease given by

118 App—10

the Parkview Company to Drew. Moreover, previous to the date of plaintiff's lease from the Parkview Company containing the above-mentioned proviso, plaintiff had taken an assignment from Drew of the latter's leashold interest in the premises, which assignment included the buildings thereon and all rent that had accrued or might accrue to Drew. It is therefore perfectly obvious that plaintiff himself desired to have the Drew lease kept alive; or at least assented to its continuance. Neither did substantial prejudice result to plaintiff after his petition had been filed in this cause, from the fact that the Drew lease was not cancelled. Nor does it appear that a demand ever was made by Kemp for its cancellation and refused by the Parkview Company. And if such demand had been made and there had been an obligation on the Parkview Company to cancel it, the breach of that covenant would not have destroyed the Parkview Company's right to rent, if Kemp retained possession instead of seeking to rescind the contract and surrender possession on account of the breach. He had, at most, an action for damages for the breach. [Hall v. Ryder, 152 Mass. 528; Milliken v. Thorndyke, 103 Mass. 82; Bell v. Baker, 43 Minn. 86.] The alleged failure of the Parkview Company to cancel the Drew lease in no way affects the merits of this case.

As far as Kemp is concerned, we might hold that, by his own pleadings, he concedes the Parkview Company's right to be paid its ground rent out of the rent due from the Catering Company. Neither do we find any evidence in the record that Kemp has creditors entitled to dispute the Parkview Company's right to a preference. And even against his creditors there would be an equity in favor of the Parkview Company as the original lessor. Kemp is insolvent and the Parkview Company will lose its ground rent if it is not paid out of the fund in court. The petition showed a clear equity in the Parkview Company to this fund; for it was alleged that

unless plaintiff was granted a receivership, the Parkview Company had the right to, and would, re-enter the premises and forfeit his lease. A receiver was appointed on plaintiff's petition and the rents ordered paid into court; thereby cutting off the Parkview Company from its right to collect its rent by garnishment proceedings against the undertenant, or any other legal process. A court of equity having thus deprived the Parkview Company of its legal remedy, ought to take care that no harm results to it from the interference. [Balfe v. Blake, 1 Ir. Ch. n. s. 365.] Now, in a case of this kind, when the original lessee is insolvent and the lessor cannot collect from him, and a court has ordered the funds paid to a receiver, thereby preventing an action at law by the original lessor, the court will collect the rents from undertenants for the benefit of the original lessor. Perhaps it will do so when there is no receivership; for equity regards the rent as a trust or charge on the estate, which it will enforce by taking the rent due from the undertenant and turning it over to the owner of the premises in satisfaction of his rent. This is to prevent the profits of the estate from being taken by the lessee or others, without making compensation to the owner for the use of his ground. [Treackle v. Coke, 1 Vernon 165; Goddard v. Keat, 1 Vernon 87; 2 Taylor, L. & T. (9 Ed.), 659; 1 McAdams, L. & T., p. 657; Balfe v. Blake, 1 Ir. Ch. n. s. 365; Riggs v. Whitney, 15 Ab. Pr. 388; 1 Story, Eq. Juris. (13 Ed.), sec. 687; Glassner v. Fredericks, 73 Mo. App. 429.]

The case of Otis v. Conway, 114 N. Y. 13, is undistinguishable from the present one, so far as the immediate point is concerned. The plaintiffs had leased premises in New York and their lessee had sublet part of them. Afterwards the first lessee was adjudged a lunatic and a committee appointed to take charge of his estate. After this occurrence the undertenant's rent for a year, by agreement of the parties, was deposited with

a trust company until it should be judicially determined
who was entitled to it.   The lunatic's estate was insol-
vent and the undertenant's rent was claimed by the com-
mittee for the benefit of his creditors, against the claim
of the landlords' that it be applied on their demand for
rent.   In other words, the committee contended that the
landlords' demand for rent should stand simply as any
other claim against the estate, and not be accorded a pre-
ferential right to the rent due from the undertenant
to the original lessors.   In disposing of this contention
the Court of Appeals of New York said that in equity
rent was a charge on the estate and in good conscience
the lessee ought not to take the profits thereof without
a due discharge of the rent.   And, further, that the cred-
itors of an insolvent lessee could have no moral or equit-
able claim to the profits issuing from leased land until
after the landlords' claim was satisfied.   The other au-
thorities we have cited pronounce the same doctrine in
substance, and all of them support the demand of the
Parkview Company for the fund in controversy as
against the demand of Kemp and those claiming under
him.   We quote a very pertinent passage from the opin-
ion in Riggs v. Whitney, 15 Ab. Pr. 388, 390:

"The rents which come into the hands of a receiver,
from undertenants of a judgment-debtor, should not be
considered as subject to distribution among creditors,
until the claim of the original landlord has been extin-
guished.   The superior equity of the landlord, in such
a case, is so obvious, that it ought not to be deemed open
for discussion; especially where, by the original letting,
the right of the receiver to continue in receipt of rent
from the undertenants, must necessarily depend upon
his performance of the lessee's covenant to pay the rent
reserved to the landlord.   Nor is the form of the pres-
ent application open to any objection; but on the con-
trary, it has long ago received judicial sanction.   [Dixon
v. Smith, 1 Sawn. 457; 1 Dan. Ch. Pr. 644; Noe v. Gib-

son, 7 Paige 513.] Where property in the possession of a receiver is claimed by a third person, the proper course is to apply to the court from whom he derives his appointment, by petition, for an order that he pay or deliver it over to the party to whom it rightfully belongs; and to attempt to deprive an officer of the court of property in his possession, by suit or other adverse proceeding, without first obtaining leave of the court, would be regarded as a willful contempt, for which the party instituting the proceeding would subject himself to punishment by attachment. [Angell v. Smith, 9 Vesey 335; 1 Barb. Ch. 72; Pelham v. Harley, 3 Awan. 291, note.]"

But it is said because the leases given by the Parkview Company recognized the right of the tenants to remove the improvements on the property at the end of the term, the improvements became personal property and the rent to be paid for them did not issue out of the land, but out of personalty. In dealing with this proposition it is to be premised that the contract between Kemp and Earp & Webb, who afterwards organized the San Antonio Catering Company, distinctly recognized that the portion of the gross receipts of the second story which would be paid to Kemp, was to be rendered as rent for the use of the premises. The lease was for the second story of a building designated as being on the northwest corner of DeBaliviere and Waterman avenues; not on a movable building, or one which Kemp might locate where he pleased. The lessees acquired the right to have the building stay where it was; that is, on the Parkview Company's ground. The business was to be conducted by Earp & Webb, and Kemp was to receive a portion of the profits as rent. In our judgment the fact that this building might be removed after the lease expired, has nothing to do with the question for decision. It could not be removed before, without releasing Kemp's tenants from their obligation to pay rent. Neither could it remain on the ground during the term of the lease except

on the condition of paying the Parkview Company the rent which would accrue to it under the lease granted to Kemp; for if a default occurred the lease provided for a re-entry and forfeiture. Kemp's subtenants would not have paid rent to him for the use of the building disconnected from the ground on which it stood, and the rent they paid was as much for the use of the land on which Kemp had a lease as for the second story of the building; which would have have been useless without the support of the ground beneath it.

The further contention is made against the Parkview Company's right to a preference, that it had not reduced its demand against Kemp for rent to a judgment. To this contention we answer that this is a case of a superior equity which the Parkview Company is enforcing; and that the proof conclusively shows Kemp is insolvent and a judgment against him would be wholly fruitless. This he practically concedes in his petition; and, moreover, he swore himself that $650 of the rent was owing to the Parkview Company. Its claim, therefore, stands practically undisputed. These facts leave no doubt in our minds that a preliminary judgment at law is not essential to the Parkview Company's getting relief in equity. [Davidson v. Dockery, 179 Mo. 687, 78 S. W. 624; Reyburn v. Mitchell, 106 Mo. 365, 16 S. W. 592; Burnham v. Smith, 80 Mo. App. 35.] Besides the appointment of a receiver at Kemp's instance made it impossible for the Parkview Company to utilize a judgment by garnishing his undertenant if it had obtained one.

The Parkview Company is entitled to a preference out of this fund and its position is such that a preference ought to be enforced in its favor in the present case.

The demand of the San Antonio Catering Company to be allowed the expense of interpleading is not contested by the Parkview Company, which we find is en

Kemp v. San Antonio Co.

titled to the fund; therefore, we need not go into the merits of said claim.

The judgment will be reversed and the cause remanded with directions to enter a decree allowing the San Antonio Catering Company reasonable attorney's fees and expenses in the matter, and adjudging that the balance of the fund, after paying the court costs, be turned over to the Parkview Company. All concur.