Landlord and tenant interplead their claims to rent of a subtenant, paid into court.
The trustees of the estate of Florence R. Strauss leased to Okin and Isaacs a plot of land, 168-176 Springfield avenue, Newark, for a term of thirty years, beginning April 1st, 1925, at a yearly rental for the first ten years of approximately $35,000, payable in equal monthly installments. After the tenants erected seven one-story stores on the demised premises, as they had agreed to do, they assigned the lease to the Uptown Holding Company, their company, to which they were authorized to assign. The Uptown Holding Company leased one of the stores to F.W. Woolworth Company for a term of twenty years, at an annual rental of $15,000 payable in equal monthly installments. The rent of the subtenant was assigned to Okin for moneys alleged to be due and to accrue.
On February 8th, 1932, at a time when more than $30,000 rent was due from the tenant, the landlords gave notice, in writing, to the subtenant, to pay to them the rent then due and unpaid and thereafter to accrue under the sublease, "in the manner and to the extent provided by the provisions of an act of the legislature of the State of New Jersey entitled `An act concerning distresses.'" Thereafter, Okin, the assignee, brought suit against the subtenant for the rent, and thereupon the subtenant, claiming to be unable to determine to whom the rent belonged, paid into court $7,500, six months' rent, which had accrued monthly after giving of the notice, and was discharged; the landlords, the tenant and the assignee being decreed to interplead.
At the hearing, upon the landlord's threat to impeach the bonafides of the assignment, the assignee withdrew and rested on the tenant's right only. *Page 544 
The act concerning distresses, March 16th, 1795 (Patterson'sLaw 172), revised in 1846 (Rev. 1847, page 63), and again revised in 1877 (Comp. Stat. p. 1939), limits distresses to the goods of the tenant, and put an end to the common law distress upon all goods found upon the demised premises, regardless of ownership. Hoskins v. Paul, 9 N.J. Law [*]110. A supplement to the act (P.L. 1848 p. 222), as revised and now section 22 of the Distress act (Comp. Stat. p. 1945) provides:
"Under-tenant to Pay Rent to Landlord, After Notice. — That when premises shall be underlet by any tenant, the under-tenant shall be liable to pay to the lessor or landlord the rent which shall accrue, from and after notice in writing shall be served for that purpose upon the said under-tenant, or which shall be unpaid by said under-tenant at the time of such notice; and the lessor or landlord shall have all the remedy for the recovery of the same, as is provided in this act; provided, however, that the rent to be paid by such under-tenant shall in no case exceed the amount agreed to be paid by the first tenant; and provided also, that in case a part of the premises shall be underlet, payment shall be required only for the part underlet to such tenant, and at a rate proportioned to the rent agreed to be paid by the first tenant or lessee. (Rev. 1877, page 313.)"
The landlords' demand of the subtenant is specifically tied to this section, and in their statement of claims they rely exclusively upon the right derived thereunder, and, consequently, we are confined to the issue thus presented. Within this limited scope, the landlords maintain that they are entitled to the fund, upon their construction of the second proviso of the section just quoted, that "the subtenant is required to make payment at the rate fixed on account of all rents due and in arrears from the tenant to the landlords;" in other words, that the rent paid into court is wholly applicable to the satisfaction of the landlords' rent, inasmuch as it is less than the sum of the subtenant's annual ratio of the rent now due the landlords. On the other hand, the tenant contends that the rate is as the value of the area sublet bears to the value of the demised premises. We think neither is admissible. The statute requires of the subtenant that he pay the landlords (and it renders him liable therefor and his chattels subject to distress) the rent he agreed to pay the tenant *Page 545 
for the part underlet, at a rate proportionate to the rent agreed to be paid by the tenant. The proportion is measured by the yield, not the area. The landlords are entitled to so much of the moneys in the hands of the court, as $15,000, the subtenant's annual rental, bears to the tenant's $35,000 annual rental, viz., the landlords three-sevenths, the tenant four-sevenths. A division between the landlords and the tenant, in view of the latter's default, is palpably unjust, but is all the landlords ask under their notice, and as their pleadings now stand, nothing more can be awarded them. They have misconceived their rights.
The subtenant's rent belongs to the landlords. There is, it is true, no privity of contract between the landlords and the subtenant and, consequently, there can be no recovery at law against the latter, except, perhaps, to the extent of the liability imposed by section 22. But in equity the rent is regarded as a trust and a charge upon the estate. Thus, in StoryEq. Jur. 307 § 926 g, says:
"It is well known that, although a derivative lessee or under-tenant is liable to be distrained for rent during his possession, yet he is not liable to be sued for rent on the covenants of the lease, there being no privity of contract between him and the lessor. But suppose the case to be that the original lessee is insolvent and unable to pay the rent; the question would then arise whether the under-lessee should be permitted to enjoy the profits and possession of the estate without accounting for the rent to the original lessor. Undoubtedly there would be no remedy at law. But it is understood that in such a case courts of equity would relieve the lessor, and would direct a payment of the rent to the lessor upon a bill making the original lessee and the under-tenant parties. For if the original lessee were compelled to pay the rent, he would have a remedy over against the under-tenant. And besides in the eyes of a court of equity the rent seems properly to be a trust or charge upon the estate; and the lessor is bound, at least in conscience, not to take the profits without a due discharge of the rent out of them."
In Otis v. Conway, 114 N.Y. 13, the tenant sublet a part of the demised premises and, being insolvent, the landlord was awarded the rent due from the subtenant, the court holding, "equitably it [the rent] is a charge upon the estate, and the lessee in good conscience ought not to take the profit thereof without a due discharge of the rent. The creditors *Page 546 
of the insolvent lessee can have no moral or equitable claim to the profits issuing from the leased lands, until after the landlord's claim for rent is satisfied * * *." A similar case isKemp v. San Antonio Catering Co., 118 Mo. App. 134, where the court approved Otis v. Conway, supra, saying: "* * * for equity regards the rent as a trust or charge on the estate, which it will enforce by taking the rent due from the under-tenant and turning it over to the owner of the premises in satisfaction of his rent. This is to prevent profits of the estate from being taken by the lessee or others without making compensation to the owners for the use of his ground." In Forrest v. Durnell, 86 Tex. 647,
the court adopted the doctrine as laid down in Story. See, also, Haley v. Boston Belting Co., 140 Mass. 73.
The landlords' equity is superior to the assignee's. The assignee took with notice of the trust.
The landlords are entitled to the subtenant's rent upon another principle. The fund is in the control of the court, paid by the subtenant to forestall eviction, or at least as a concession to safety, and it is the court's privilege, as well as its duty, to dispose of it as equity and justice demand.
The landlords had the right of re-entry upon the tenant's default in the payment of the rent, and upon execution of a judgment to dispossess the tenant, under the Landlord and Tenant act, the subtenant would suffer eviction. Inhabitants ofTownship of Union v. Bayliss, 40 N.J. Law 60. To protect himself against eviction, a subtenant may pay the rent due the landlord and discharge himself of his rent due the tenant. 36C.J. 567. The court of appeals of New York in Peck v.Ingersoll, 7 N.Y. 528, said: "It has been frequently decided upon the most obvious principles of justice that if an under-tenant is compelled to pay rent to the head landlord he may deduct it from the rent due to his immediate lessor; or if the sum paid exceeds that due the lessee the tenant may in an action of assumpsit for money paid to the use of the lessor, recover the excess. 1 Sm. Lead. Cas. (4th Am. ed.) 202, 3 and 4,marg. pages 73, 4, 5, and cases there cited; 4 Term 511. This privilege upon the part of the under-tenant *Page 547 
exists, if there be in the head landlord a legal right by the exercise of which the person who pays may be damnified unless he satisfied it. 1 Sm. Lead. Cas. 203. It is not necessary that the head landlord should distrain or even demand the money or commence or threaten a suit. The right to enforce his claim in this way will make the payment by the under-tenant compulsory within the principle of the decisions. In this case the original lessor had, as we have seen, the right of re-entry. The under-tenant was authorized to protect his possession against the exercise of this right by paying the rent to the head landlord. Such a payment is not voluntary, and there is no question but that it was made by the defendants in good faith with an honest purpose to shield themselves from damage."
The payment into court is tantamount to payment to the landlords. Though paid upon notice which limited the demand to the proportion fixed by the statute, the notice may be reasonably regarded as a threat to the subtenant's possession, and the payment as compulsory.
We do not look upon the landlords' demand upon the subtenant, though limited, as in any manner modifying their right to the subtenant's rent. They may still demand it of the subtenant, and in this court in these proceedings.
On the whole, we fail to see that the statute plays any part, or that the tenant should have any part in the rent, as against the landlords, to whom the tenant is heavily indebted for rent. Section 22 of the Distress act simply restores the landlord's common law right to seize the subtenant's goods in proportional satisfaction of his rent; it merely creates an additional remedy, a lien by distress pro tanto, in aid, not in limitation, of his equitable right to the subtenant's rent.
Leave will be given to reframe the pleadings and, reframed, the fund will be decreed to the landlords. *Page 548