Complainant by his original bill prayed the protection of this court in his possession of half of a store building at Wrightstown, Burlington County. Complainant was a lessee of a sub-lessee and conducted an alcoholic beverage business. The premises demised were most advantageously located for *Page 398 
the operation of his enterprise; his half of the store building fronted upon the main highway leading to Fort Dix and immediately adjoined the government property; it was the nearest commercial site to the main entrance to the military reservation.
When it was determined by the government to greatly enlarge Fort Dix, Alfred P. Sanna leased from the owner the nearest lot to the main entrance available for commercial use. He in turn leased the land to Mark Creedon and the latter, as provided by his lease, erected thereon a one-story building. In a part of the store thus created, Creedon opened a small merchandising business. Then, on January 23d 1942, he entered into a written lease with complainant for the balance of the store, complainant having obtained a license to conduct his alcoholic beverage business.
Complainant's lease expired April 1st, 1943, which was prior to the day fixed for final hearing in this cause. Counsel have advised the court that complainant now leases directly from the owner of the land.
In or about the month of October, 1942, difficulties arose between Creedon and complainant with respect to the space to which complainant, by virtue of his lease, was entitled, and complainant, alleging that Creedon had violated the covenants of the lease and had wrongfully instituted an action in the District Court of Burlington County designed to evict him, and that the portion of the store leased was uniquely advantageous to complainant as a location for the prosecution of his business, filed his verified bill and applied for ad interim restraint. An order to show cause was allowed, and restraint granted. Subsequently Creedon failed in his business, became insolvent and moved to another state; he did not assign to Sanna the sub-lease to complainant but did surrender his term and gave to Sanna personal property in the store.
After the surrender of his term by Creedon, Sanna attempted to exercise dominion over the store property and to oust complainant therefrom. When complainant refused to vacate, Sanna locked the doors and locked complainant in the building. Complainant then sought and was granted leave to supplement his bill and to bring in Sanna as a party *Page 399 
defendant. On an application for ad interim restraint of Sanna, complainant volunteered to deposit with a neutral person, subject to disposition by this court, the amount of money which he should pay to Creedon as rent under his lease. Upon the condition that complainant make such deposits of rent moneys until complainant's lease expired, ad interim restraint was granted. Counsel then agreed that the rent should be deposited from month to month in the Union Bank and Trust Company, at Mount Holly, in a special account in the name of Herbert Richardson, the sergeant-at-arms of this court.
The original and the supplemental bills prayed a specific performance of complainant's lease and a permanent injunction against interference with complainant's peaceable possession thereunder. A decree pro confesso was taken against the defendant Creedon. At final hearing it developed that complainant's lease had expired. Counsel for complainant, nevertheless, took the position that the court should determine what rent, if any, should be paid by complainant for his occupancy of the leased premises from the time of his last payment to Creedon until the expiration of his lease, and that the court should decree payment out of the moneys deposited to the person entitled to receive the rent, or the repayment to complainant of the moneys deposited. Complainant also contended that if he was liable to Sanna for payment of rent, the amount would be that which Sanna had agreed to accept as rent from Creedon. The defendant Sanna took the position that he was entitled to be paid the rent which complainant had obligated himself to pay Creedon.
Creedon, by the terms of his lease with Sanna, had been denied the privilege of sub-letting and a supplemental written agreement was made between Creedon and Sanna permitting Creedon to sub-let to complainant, provided that Creedon pay Sanna $30 each month in addition to the sum of $50, each month, the amount of rent fixed by his lease.
The pleadings do not directly present the questions posed by counsel. However, complainant sought and has had the protection of this court in his possession of the leased premises for the full term of his lease. That protection was given *Page 400 
by injunctive order conditioned upon his depositing the rent he had contracted to pay in the special bank account subject to disbursement by court order. It is proper, therefore, that I should advise a decree distributing the fund. F.W. WoolworthCo. v. Rice (V.C. Backes), 114 N.J. Eq. 542;169 Atl. Rep. 332.
Counsel have not pointed out to the court nor has the court found a New Jersey decision dispositive of the present controversy. At common law a surrender of his term by a lessee and its acceptance by the lessor merged the lesser term into the greater. So, it was held that, while a sub-tenant was not deprived of his right to use the property demised to him, neither the lessor nor the lessee could maintain an action against him for rent. Webb v. Russell, 3 T.R. 393; 100 Eng. Reprint 639.
In McDonald v. May, 96 Mo. App. 236; 69 S.W. Rep. 1059, the court said: "The surrender of the main term of a leasehold estate totally extinguishes it, and with it any subterms; or rather, would extinguish any subterm as a necessary result of the extinction of the main term, but for another rule of law which has been raised for the protection of under-tenants, to wit: that their rights will not be destroyed or impaired by a surrender of the main lease: and yet, the surrenderee may not sue the undertenant for rent or on any other covenant. This rule is both ancient and technical, but has been laid down by all text writers and followed in all old judgments on the subject." The reason assigned for the latter rule protecting the sub-tenant is that by the sub-lease the sub-lessee acquires an estate in the land which cannot be defeated by any act or omission of the sub-lessor that does not derogate from the rights of the original lessor; therefore, after sub-letting, the original lessee cannot affect the interest of the sub-lessee by a surrender to the original lessor. 16 R.C.L. Landlord and Tenant § 382 and § 680;32 Am.Jur. Landlord and Tenant §§ 425, 900 and 917.
In the instant case Creedon surrendered his term to Sanna. This surrender extinguished all interest of Creedon in the term and all rights conditioned upon continuance of the term. Snowhill
v. Reed, 49 N.J. Law 292, reversed on other *Page 401 
grounds, sub nom., Reed v. Snowhill, 51 N.J. Law 162;16 Atl. Rep. 679. At the time of his surrender of the term Creedon was insolvent. The authorities have laid down a rule applicable to such a situation. It is thus stated in section 384 of16 R.C.L. Landlord and Tenant: "When the lessee becomes insolvent, equity will compel the sub-tenant to make all future payments of rent to the lessor according to the terms of the sub-lease, inso far as necessary to secure the lessor." (Italics mine.) Reference is made to the note in 52 L.R.A. (N.S.) 977:
There one finds cited Massachusetts, Missouri, New York and Texas decisions. These authorities in turn go back to the decision inGoddard v. Keate, 1 Vern. 88; 23 Eng. Reprint 330. Professor Story in his Equity Jurisprudence, § 687, citing Goddard v.Keate, says: "But suppose the case to be, that the original lessee is insolvent, and unable to pay the rent; the question would then arise, whether the under-lessee should be permitted to enjoy the profits and possession of the estate, without accounting for the rent to the original lessor. Undoubtedly there would be no remedy at law. But it is understood that, in such a case, courts of equity would relieve the lessor; and would direct a payment of the rent to the lessor, upon a bill making the original lessee, and the undertenant, parties. For, if the original lessee were compelled to pay the rent, he would have a remedy over against the under-tenant. And besides, in the eyes of a court of equity, the rent seems properly to be a trust or charge upon the estate; and the lessor is bound, at least, in conscience, not to take the profits without a due discharge of the rent out of them."
What rent then should complainant, the tenant of a sub-tenant, pay to Sanna, lessee of the owner? In F.W. Woolworth Co. v.Rice, supra, Vice-Chancellor Backes quoted from Otis v.Conway, 114 N.Y. 13, with approval: "`* * * the lessee in good conscience ought not to take the profit thereof without a due discharge of the rent. The creditors of the insolvent lessee can have no moral or equitable claim to the profits issuing from the leased lands, until after the landlord's claim for rent issatisfied * * *.'" (Italics mine.) Vice-Chancellor Backes also cited other authorities and called *Page 402 
attention to the fact that a landlord in New Jersey had the right of re-entry upon a tenant's default in the payment of rent, and, upon execution of a judgment, to dispossess the tenant with the result that the sub-tenant also suffers eviction under the Landlord and Tenant Act. The Vice-Chancellor added: "To protect himself against eviction, a sub-tenant may pay the rent due thelandlord and discharge himself of his rent due the tenant." (Italics mine.)
In some of the authorities I examined I found a general statement that the owner or landlord was entitled to collect from the sub-tenant the rent payable under his lease with the defaulting sub-lessor. I did not come upon a case where the rent to be paid by an under-tenant would exceed the rent required to be paid by his lessor to the owner or landlord. Obviously it would be inequitable for an owner or lessor to profit at the expense of the insolvent lessee's creditors. In Otis v.Conway, supra, the New York court suggested this right of creditors of an insolvent lessee to take any moneys due their debtor over and above the amount of rent the debtor was required by his lease to pay to his lessor. The fact that our courts have recognized that the necessity may arise for a sub-tenant to pay rent due his immediate landlord to the latter's landlord to insure continued peaceable possession of the demised premises and to protect his goods and chattels from seizure, is also persuasive that the only rent the lessor of the under-tenant's lessor could justly demand would be the rent due or to become due him in accordance with the lease he executed. In this connection and in the absence of direct precedents, it is helpful to consider the provisions of R.S. 2:58-4. This act restored a landlord's common law right to seize a sub-tenant's goods in proportional satisfaction of his rent; it created an additional remedy, a lien by distress pro tanto, in aid, not in limitation, of his equitable right to the sub-tenant's rent.F.W. Woolworth Co. v. Rice, supra. Its provisions become effective upon service by the lessor or landlord of a written notice upon an under-tenant. No such notice was served in the present case. However, the intent of the legislature as expressed in the statute is in full accord with the authorities I have cited and my reasoning in arriving at *Page 403 
my present decision. The statute permits the landlord to distrain upon the goods and chattels of a sub-tenant "for the rent which shall accrue from and after notice in writing served for that purpose upon the under-tenant, or which shall be unpaid by the under-tenant at the time of such notice." However, the statute adds this specific condition, "* * * the rent to be paid by suchunder-tenant shall in no case exceed the amount agreed to be paidby the first tenant." (Italics mine.)
When Creedon defaulted in payment of his rent to Sanna, the latter instituted a proceeding in the Burlington County District Court to oust him from the demised premises. It was then that Creedon gave or assigned personal property to Sanna and surrendered his term. The only rent which Sanna could then justly demand of complainant was that which was or would become due from Creedon at $80 per month. Instead of defaulting, Creedon could have abandoned his business and still collected rent from complainant until the end of the term; he could have paid Sanna $80 each month and pocketed the surplus. If he became insolvent, such surplus could be used to pay his debts. In this proceeding complainant has sought a credit against any rent he might be decreed to owe Creedon by reason of Creedon's breach of certain specific covenants of their lease. This phase of the case, as I see it, may not now be properly determined. The dispute may be left for decision in any possible proceeding prosecuted against complainant by Creedon or by his creditors.
The arbitrary actions of Creedon in the first instance necessitated the institution of this suit and the intervention of this court; the unjust demands of Sanna and his arbitrary actions required the filing of a supplemental bill and additional injunctive action. Complainant has, at all times, been willing to do what was right; he has asked only undisturbed possession and the free use of his part of the store from Creedon and Sanna. After Creedon's default, complainant offered to pay Sanna the rent due or to become due from Creedon; such an offer and an actual tender were, in fact, made in open court. *Page 404 
I shall advise a decree allowing complainant his taxed costs and a counsel fee of $200. Under the unusual circumstances of this case, I shall further advise that the costs and the counsel fee be apportioned and charged equally against the two defendants. I shall further advise payment to Sanna, from the moneys on deposit, of the amount of rent which he should have received and did not receive from Creedon, less his half of the costs and counsel fee which shall be paid complainant from the fund. I shall advise return of the balance of the moneys on deposit to complainant.