**In re AMERICAN INTERNATIONAL AIRWAYS, INC., Debtor.**

**Bankruptcy No. 84–02379K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 8, 1984.

Pace Reich, Philadelphia, Pa., for debtor.

Neal D. Colton, Ethan D. Fogel, Dechert Price & Rhoads, Philadelphia, Pa., for Maxwell J. Goldberg.

Harry P. Begier, Jr., Philadelphia, Pa., interim trustee.

Edward J. DiDonato, Philadelphia, Pa., interim trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Funds representing rental proceeds from the lease of a Boeing Model 727–023 aircraft have been paid into the Court pursuant to an interpleader motion. Both the Trustee of American International Airways, Inc. ("AIA"), and the owner of the aircraft claim they are entitled to receive the funds. For the reasons stated herein, we find that the interpleader funds are subject to a constructive trust in favor of the owner. We will enter an order releasing the funds to the owner of the aircraft.

### FACTS [1]

Maxwell J. Goldberg ("Goldberg") is the owner of a Boeing Model 727–023 aircraft equipped with three (3) Pratt and Whitney JT8D–7A engines. By a lease agreement dated December 28, 1983 ("master lease"), Goldberg leased the aircraft to AIA for seventy-two (72) months for a monthly rental fee payable on the 28th day of each month. AIA took delivery of the aircraft on December 28, 1983.

On February 13, 1984, AIA subleased the aircraft to American Airlines, Inc. ("American") for a monthly rental fee payable on the 15th day of each month. American took delivery of the aircraft on February 15, 1984. The sublease recognizes the existence of the master lease and provides that: "this lease shall be subordinated and subject in all respects to the terms, conditions, and provisions of the Master Lease, a copy of which has been furnished by Lessor to Lessee ..." Sublease ¶ 15(c).

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

Paragraph 21(B) of the master lease provides that "[t]his Lease shall in all respects be governed by, and construed in accordance with, the Laws of the United States of America and the State of New Jersey, including all matters of construction, validity, and performance." Paragraph 21(B) of the sublease contains an identical provision.

At the time the sublease was executed, Goldberg delivered a letter to AIA and American (the "non-disturbance letter") indicating his consent to American's use of the aircraft notwithstanding any default by AIA, as long as all payments by American under the sublease would be made directly to Goldberg.[2]

Rental payments up to and including the July 15th payment were made by American to AIA under the sublease. AIA, however, failed to make the monthly rental payments due under the master lease on July 28, 1984 and August 28, 1984. AIA filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on July 19, 1984.

On or about August 22, 1984, the Court authorized American to pay the August 15, 1984 rental payment due under the sublease to the Court, pending the Court's resolution of the issue of who is rightfully entitled to the funds. Pursuant to that Order, American interpleaded the sum of $69,365.00 into the Court. On September 13, 1984, the Court approved a stipulation between the parties rejecting the master lease and providing for the continued lease of the aircraft by Goldberg to American according to the terms of the sublease.

The Trustee of AIA claims the interpleaded funds are property of the estate[3] because they are rental proceeds from the debtor's sublease with American. Under the Bankruptcy Code ("Code"), a leasehold interest is deemed property of the estate if a debtor is a lessee of property at the time the petition for bankruptcy is filed. *In re Babco, Inc.*, 28 B.R. 656, 658 (Bankr.W.D. Pa.1983). Post-petition rents from property of the estate are also deemed property of the estate. 11 U.S.C. § 541(a)(6). Therefore, the Trustee argues the funds should be released to the estate to be distributed to administrative claimants according to the priority distribution scheme set forth in the Code. "[G]oldberg has no greater right to this fund than any other administrative claimant. By releasing this money to Goldberg, the Court would be granting a preference to him over all of the other administrative claimants. Goldberg's situation is no different from that of the Trustee, his counsel, his accountants and the myriad of other administrative claimants ... a post-petition rental claim necessary to preserve the estate is merely entitled to an administrative priority. *See* 11 U.S.C. Sections 503 and 507." Memorandum of law, p. 4.

Goldberg's claim to the interpleader funds is based on a constructive trust theory. He contends that the Court may impose a constructive trust on the rental proceeds that constitute the interpleader funds

---

**2.** *See* Exhibit A to memorandum of law of Maxwell J. Goldberg. Paragraph 2 of the letter provides:
"The undersigned is the Lessor under the Master Lease. For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned hereby consents to Lessee that, notwithstanding any default by Lessor under the Master Lease, if, and as long as, Lessee keeps and performs each and every covenant and agreement to be performed or observed by it under the Lease, Lessee shall continue quietly to enjoy the aircraft without interference by the undersigned or by any person lawfully claiming by, through or against the undersigned, provided, however, that all payments to be made by

Lessee under the Lease shall be timely paid directly to the undersigned, or any person designated by the undersigned to receive such payment."

**3.** Section 541 defines property of the estate and specifies what property becomes property of the estate. The commencement of a bankruptcy case under title 11 creates an estate composed of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The statutory definition of property of the estate is broad and includes both tangible and intangible property. 4 *Collier on Bankruptcy* ¶ 541.06 at 541–26 (15th ed. 1983).

and release the funds to him because he has an equitable interest in the funds which the parties to the sublease recognized. Upon examination of caselaw on the subject of constructive trusts and the legislative history accompanying § 541, we agree.

 A constructive trust will be imposed whenever necessary to satisfy equity. *In re Tufts Electronics, Inc.,* 34 B.R. 455, 467 (Bankr.D.Mass.1983). Bankruptcy courts have used the doctrine of constructive trusts as a tool of equity to prevent unjust enrichment. *In re Kennedy & Cohen, Inc.,* 612 F.2d 963, 965 (5th Cir.1980), *cert. denied sub. nom. Wisconsin v. Reese,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980). One instance of where a court will impress a constructive trust is where a person holding title to property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. The trust is imposed not because of the intention of the parties, but because the person holding the title to property would be unjustly enriched if he were permitted to keep the property. To prevent such unjust enrichment, an equitable duty to convey the property to another is imposed upon him. *In re Angus,* 9 B.R. 769, 771 (Bankr.D.Ore.1981) *citing Restatement of the Law, Restitution,* § 160 (1937).

The Fifth Circuit Court of Appeals, in discussing the concept of constructive trusts, has stated the following:

"The term 'constructive trust' in the sense used for bankruptcy purposes is not defined in the Code nor, so far as we could readily find, in jurisprudential interpretations. The concept expressed is that the person with legal title to the property owes equitable duties to deal with the property for the benefit of another person, Restatement of Trusts, 2d, § 2 ('Definition of a Trust') (1959), because he acquired the title under circumstances where the transferor intended that another have the beneficial interest therein, cf. Id., § 404, ('Resulting Trust'), or because he acquired it wrongfully or would be unjustly enriched if he were

permitted to retain it, Id., Comment e ('Constructive trusts')."

*Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 967 n. 4 (5th Cir.1983).

Although the Court in *Georgia Pacific, supra,* held that no constructive trusts existed in favor of material suppliers under Arkansas and Mississippi law, the Court recognized that:

"[i]f indeed all or part of the money so owed was subject to a constructive trust in favor of the suppliers ... the bankruptcy court would be required to recognize those equitable interests, and perhaps, the debtor in possession's sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property."

*Id.* at 968.

 The burden of proof is on the party asserting a constructive trust to establish his claim. *In re Minton Corp.,* 28 B.R. 774, 783 (Bankr.S.D.N.Y.1983).

 A trust by implication of law may be impressed on property of the bankruptcy estate. The court refers to state law to determine whether the trust would be imposed. *In re Harter, Inc.,* 31 B.R. 1015 (D.C.Kan.1983). Whether or not a trust has been established is a matter of state law. *In re Minton, supra,* at 783.

 New Jersey law, which is the governing state law in this matter under both the master lease and the sublease, recognizes the equitable remedy of constructive trust. *D'Ippolito v. Castoro,* 51 N.J. 584, 242 A.2d 617 (1968). Under New Jersey law, there may be a constructive trust imposed where the retention of property would unjustly enrich the person retaining it, even though its acquisition was not wrongful. *Moses v. Moses,* 14 N.J.Eq. 575, 53 A.2d 805, 808 (1947). The Supreme Court of New Jersey has stated that "[a]lthough *Gordon v. Griffith* ... indicates that fraud is an essential element of a constructive trust, the better view is that a constructive trust will be impressed in any case where to fail to do so will result in an unjust enrichment." *D'Ippolito, supra,* 242 A.2d at 619.

A constructive trust has been imposed on a sublessee's rental payments in favor of a lessor under New Jersey law even though there is no privity of contract between lessor and sublessee. *See F.W. Woolworth Co. v. Rice*, 114 N.J.Eq. 542, 169 A. 332. (N.J.Ch.1933). In the *F.W. Woolworth* case, the subtenant interpleaded rental payments into the court so that the court could determine whether the rent belonged to the tenant or the landlord. Relying on the doctrine of constructive trusts, the court found that the rent of the subtenant belonged to the landlord.

The Court quoted with approval Professor Story's treatise on equity jurisprudence:

" '[S]uppose the case to be that the original lessee is insolvent and unable to pay the rent; the question would then arise whether the underlessee should be permitted to enjoy the profits and possession of the estate without accounting for the rent to the original lessor. Undoubtedly there would be no remedy at law. But it is understood that in such a case Courts of Equity would relieve the lessor and would direct a payment of the rent to the lessor .... and besides in the eyes of a Court of Equity the rent seems properly to be a trust or charge upon the estate; and the lessor is bound, at least in conscience, not to take the profits without a due discharge of the rent out of them.' Story, Equity Jurisprudence § 926."

*Id.*

■ The imposition of a constructive trust is also suitable in the context of an insolvent sublessor under New Jersey law. *See Shaw v. Creedon*, 133 N.J.Eq. 397, 32 A.2d 721 (N.J. Ch. 1943). When the sublessor became insolvent in that case, the sublessee paid the rent into a special account under the court's supervision. The insolvency of the sublessor was a relevant factor in the court's decision to impose a constructive trust on the sublessee's rental payments. Professor Story's treatise was also quoted with approval by the court in *Shaw, supra,* as was the following passage from *Ruling Case Law:*

" 'When the lessee becomes insolvent, equity will compel the subtenant to make all future payments of rent to the lessor according to the terms of the sublease, insofar as necessary to secure the lessor.' 16 *R.C.L.*, Landlord and Tenant § 384."

■ Although the rental property in this case is an aircraft and not real property as in the *F.W. Woolworth, supra,* and *Shaw, supra,* cases, the imposition of an equitable constructive trust on the August 15th rental payment of American seems equally appropriate here to prevent the unjust enrichment of AIA, the sublessor. In entering into the sublease, AIA and American recognized the existence of the master lease. The sublease contains numerous references to the master lease. When the sublease was executed, Goldberg delivered the nondisturbance letter to AIA and American, indicating that American could continue to use the aircraft, notwithstanding any default by AIA as long as all payments by American under the sublease were made directly to Goldberg.

This case is factually distinct from other cases where the debtor is a lessee of property belonging to another and the debtor remains in actual possession of the leased property. In such cases, the lessor would be entitled to an administrative claim against the estate in the event of a post-petition default on the lease and the claim could not be satisfied before the claims of other administrative claimants. Here, however, AIA sublet the aircraft to American and the sublease specifically provides that the sublease is subordinate to and subject in all respects to the terms of the master lease. The debtor, AIA, may hold bare legal title to the rental payment of the sublessee, American, but Goldberg, the owner of the aircraft, clearly has an equitable interest in the funds. To require the funds from payment of rent under the sublease to be paid into the estate for distribution to other administrative claimants and not require the Trustee to turn over the rent to Goldberg due under the master lease would be inequitable.

The factual situation in this case is not unlike the situation described in the legisla-

tive comments to § 541 ("Property of the estate"):

"Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed."

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. (1977) 368; Sen.Rep. No. 95–989, 95th Cong. 2d Sess. (1978) 82; U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5868, 6324.

In summary, we find that the August 15, 1984 rental payment of American, paid into the Court pursuant to an interpleader motion, is subject to a constructive trust in favor of the owner and lessor of the rental property, and is not property of the estate under § 541 of the Code. An appropriate Order follows releasing the interpleader funds to Maxwell J. Goldberg.