First Wisconsin Trust Company, Respondent, vs.
Adams and others, Appellants.

*April 30—June 4, 1935.*

For the appellants the cause was submitted on the brief of *Bender, Trump & McIntyre* of Milwaukee.

*Douglass Van Dyke* of Milwaukee, for the respondent.

FAIRCHILD, J.   The recitals in the orders appealed from are in the nature of findings of fact.   It appears that the Messrs. Adams and Louis J. Petit entered into an agreement under which the Adamses were to erect, on premises owned by Petit, a forty-apartment building.   They were "to suitably equip and furnish said building for apartment residence purposes."   Petit agreed to advance $200,000 for the erection and equipment of said building, exclusive of the cost of the plans, specifications, or architect's fees, and agreed to sell the lot to the Adamses for the purchase price of $20,000, making the total purchase price for the lot, building, and equipment, $20,000 plus the actual amount invested therein by Petit.   On December 27, 1927, the form of the contract existing between them was changed to a mortgage trust indenture.   Eighteen thousand dollars had then been paid on the purchase price.   Petit deeded the premises to the Adamses by warranty deed without any bill of sale or reference to the personal property, except a clause in the deed following the description of the premises, which reads: "Together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining."   Contemporaneously there was executed to Petit a mortgage trust indenture and bearer notes for the balance of the purchase

price. This mortgage names Petit as trustee, and, after the description of the real estate, reads : "Together with all the buildings and improvements now or hereafter erected, installed or placed thereon, and all the hereditaments, privileges and appurtenances to the same belonging or in any wise appertaining, and all the rents, issues and profits which shall arise or be had therefrom." The trust indenture refers to the indebtedness thus secured as the unpaid balance of the purchase price of the premises "as evidenced by a certain unrecorded land contract executed by and between said parties, dated and acknowledged April 2, 1925, and payable as therein provided."

Was the receiver entitled to the rentals from the mortgaged premises from August 1, 1934, as against the mortgagors, the restraining order having been served on the mortgagors August 1, 1934? It is evident that taxes were due and unpaid; that rents had been collected in a sufficient amount to have prevented this, but had been used for other purposes. The mortgage pledged, in addition to the physical property, the rents and issues thereof. An impairment by the mortgagors of the security and waste had occurred. This created a situation in which the owner of the mortgage was justified in demanding the rents and in asking for the appointment of a receiver. This condition was existent when the order to show cause was issued and served on August 1, 1934. A mortgagee is entitled to have his security protected and its integrity maintained. The delayed appointment of a receiver does not necessarily fix the point, under the circumstances existing here, at which the operation of an order preventing waste should begin. *Dow v. Memphis & Little Rock R. Co.* 124 U. S. 652, 8 Sup. Ct. 673, 31 L. Ed. 565. The appellant presents the contention that the rents belonged to the mortgagors with full right to collect and disburse them as they saw fit until the receiver was appointed and took possession of the premises. They cite *Grether v. Nick,* 193 Wis. 503, 213 N. W. 304, 215 N. W. 571, as holding a

doctrine to sustain their argument in this particular. The particular quotations in appellants' brief, from the opinion in that case on rehearing, relate to a set of circumstances distinguishable from those now before us. The doctrine to be followed in this case is outlined in the *Grether Case, supra,* at page 513, where it is said: "All authorities agree that a pledge of rents and profits vests in the mortgagee a right thereto which equity will recognize and enforce in a proper manner. As already stated, the only way in which it can be enforced in this state is by the appointment of a receiver under circumstances justifying such procedure." When the mortgagors failed to pay the taxes and interest, the mortgagee was entitled to certain relief. At the time the mortgagee began its foreclosure action, its rights were fixed. The application for the appointment of a receiver to preserve the pledged rentals upon which the court made its restraining order directing the mortgagors to hold those rentals subject to the rights of the respondent, simply recognized the mortgagee's equity in the rentals and protected it. Neither the *Grether Case* nor *Ottman v. Tilbury,* 204 Wis. 56, 234 N. W. 325; *Crosby v. Keilman,* 206 Wis. 252, 239 N. W. 431, and similar cases cited, are to be considered as holding that the right or equity of the mortgagee in pledged rents and profits cannot be protected against waste by the court's power to restrain collection, or by appointing the mortgagors as conservators pending the selection of a receiver.

The mortgage agreement provided that "until default" the mortgagors "may possess, manage, operate, use and enjoy the said mortgaged property, and receive . . . the revenues, income, earnings and profits thereof. . . ." It further provides that:

"Upon the commencement of any suit to foreclose this indenture, or at any time thereafter during the pendency of such action, the court in which such action is brought, may appoint a receiver of the premises and property mortgaged

as aforesaid, and may empower said receiver to collect the rents, issues and profits of said mortgaged property during the pendency of such foreclosure suit. . . ."

By the terms of the contract, the mortgagors' right to possession existed "until default." Until proper demand was made, the mortgagors had the right to remain in possession of premises and rentals, and enjoy all benefits accruing to them under the contract. The commencement of the action and request for a restraining order was the equivalent of a demand for rents, profits, and that the mortgagors give up possession. From that time on, the rights and liabilities of the mortgagors were limited by the provisions of the contract relating to default. The mortgagors cannot be heard to deny the right of the mortgagee under provisions of the mortgage which provide that the mortgagee is entitled to possession and rents and profits "during the pendency of such foreclosure suit." As between the mortgagors and the mortgagee, an equitable assignment of the rents arose by virtue of the demand of the mortgagee for possession. *Katz v. Goodman,* 136 Misc. 166, 238 N. Y. Supp. 700; *Dow v. Memphis & Little Rock R. Co., supra.*

As said in the *Dow Case:*

"It follows that from the time of the bringing of the suit the company itself is to be treated in all respects as a receiver of the property, holding for the benefit of whomsoever in the end it should be found to concern, and liable to account accordingly."

In that case the mortgagee asked to be put in possession on February 12, 1884, and applied for a receiver March 24th. On March 27th the court granted the parties till April 7th to file briefs on the motion, but ordered the railroad company to hold the rents, profits, etc., subject to order of the court. A receiver was appointed on April 15th. It was stated that: "It is a matter of no consequence that a receiver was not appointed until April 15th, or that an application was not

made for such an appointment until March 24th." So long as the mortgagors remained in possession they were entitled to collect rents, but they could not use them for their own benefit, and were accountable for all rents collected after foreclosure proceedings were commenced and demand for possession made.

In support of the rule that the right to rents and profits, when they have been pledged, is in the mortgagee after commencement of foreclosure, are the following cases: *Prudential Ins. Co. v. Liberdar Holding Corp.* (C. C. A.) 74 Fed. (2d) 50, 52; *New Jersey Nat. Bank & Trust Co. v. Morris,* 9 N. J. Misc. 444, 155 Atl. 782; *Equitable Life Ins. Co. v. Read,* 215 Iowa, 700, 246 N. W. 779; *Connecticut Mut. Life Ins. Co. v. Shelly Seed Corp.* 46 Ohio App. 548, 189 N. E. 654. In the *Prudential Ins. Co. Case,* it was said:

"The mortgagee must take steps to perfect his rights, and it ought to be assumed, . . . that the provision [for assignment of rents upon default] is not self-executing and that until he asserts his claim he is content to let the mortgagor receive the earnings of the premises."

In the case before us the mortgagee's rights were perfected upon the commencement of the action. The practice followed by the trial court in this instance was well calculated to prevent equitable waste and protect the interests of all parties.

The ruling that the articles claimed to be personal property were covered by the respondent's mortgage and were therefore a part of the mortgage security must also be sustained. This order was dated December 13, 1934, and determined that the furniture, furnishings, and equipment with which the apartment building was originally equipped, pursuant to the contract referred to in the mortgage, together with certain alterations and additions supplementing that equipment, were subject to respondent's lien under the mort-

gage trust indenture. The apartment was erected, equipped, and furnished for residence purposes with moneys borrowed from the owner of the premises under a land contract, the terms of which bound Petit (the owner) to convey to the Adamses with mortgage back when a certain amount of the moneys advanced by Petit had been repaid. The arrangements made, and the methods of procedure adopted by the parties, sustain the inference that the equipment and furnished building were to constitute the security at the time of the giving of the mortgage. The court below found that it was the intention of the parties to treat the furnished and equipped apartment building as a unit, and that all such furniture, equipment, and subsequent alterations were subject to the lien. The evidence, as read out of the agreement and the exchange under which title to the real estate was transferred to the Adamses, amply sustains these findings. We have quoted in the earlier part of this opinion from the contract, the mortgage, and the deed sufficient to show that the mortgage bound more than the building and the land. The agreement also contained the provision that: "The purchase price for the building and equipment shall be the actual amount invested therein by the first party [Petit]. The title to the land, building, furnishings and equipment shall be and remain in the first party until transferred as hereinafter provided for." This would seem to leave the title to the personal property in Petit or his assigns, unless these effects, as, and according to the intention of the parties, were transferred by the warranty deed to the Adamses. If they were so transferred, it is to be assumed that the mortgage back included all things sold; the dominant idea being security. All that the respondent claims is that it holds these furnishings and equipment by virtue of a lien upon them as a part of the mortgage security. The terms of the instrument under which appellants claim the ownership of the

furniture and equipment does not differ in effect from the terms of the mortgage under which respondent claims its lien.

It is not necessary to consider whether or not the furnishings and equipment are to be regarded as fixtures. The intention of the parties as manifested by their agreements and conduct discloses that the furniture and equipment were to constitute a part of the mortgage security, regardless of their character as fixtures or personal property.

*By the Court.*—Orders affirmed.