[L. A. No. 18556.   In Bank.   Dec. 8, 1943.]

CHILDS REAL ESTATE COMPANY, INCORPORATED (a Corporation), Respondent, v. SHELBURNE REALTY COMPANY (a Corporation) et al., Defendants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant.

James A. McLaughlin for Appellant.

Chase, Barnes & Chase, Lucius K. Chase and Ransom W. Chase for Respondent.

GIBSON, C. J.—This appeal was taken by the defendant Bank of America National Trust and Savings Association (hereafter called the bank) from a judgment awarding plaintiff $3,861.20 which was in the possession of the bank in its capacity as trustee under a trust indenture, and denying the bank recovery of $3,074.73 demanded by the bank in a crosscomplaint.

In 1924 Childs Company of Providence, of which the plaintiff Childs Real Estate Company, Inc. (hereafter called Childs), is the successor, executed a 96-year lease on certain real property to The L. Harris Realty Co. The Harris company later changed its name to Shelburne Realty Co. (hereafter called Shelburne). In 1925 Shelburne, then known as The L. Harris Realty Co., executed a trust indenture under which a predecessor of the defendant bank was designated trustee. Using $400,000 secured through the bond issue, and $200,000 more, Shelburne erected a building on the premises. Shelburne de-

faulted on the trust agreement in 1933, and the bank appointed Shelburne its agent to collect rents from subtenants and manage the building. The rents were deposited with the bank in an account under the name of "Shelburne Realty Co., Agent," and it was agreed that all moneys so deposited should belong to the bank.

Shelburne failed to pay the rent due Childs on December 1, 1939, and taxes on the property became delinquent on December 5, 1939. The lease provided that "in case default is made by lessee [Shelburne] . . . and in the event any such default shall continue for a period of thirty days, after written notice thereof shall have been served upon lessee, the lessor [Childs] at its option may at any time after the expiration of the number of days last above specified, declare this lease terminated, and the lease-hold interest hereby created, wholly ended and terminated and may thereupon or at any time thereafter enter into and upon said demised premises . . . and the lessee hereby waives in such event any demand for the possession of said demised premises. . . ." Acting on this provision, Childs served notice of default on both Shelburne and the bank on December 15, 1939. The defaults were not remedied, and on January 17, 1940, notice of termination of the lease was served on Shelburne and the bank, and Childs took possession of the property.

Action was brought by Childs against Shelburne to quiet its title, and for a judgment for rent, taxes due and attorney's fees. Childs sought to recover from the bank $3,861.20, representing subrents collected by the bank prior to January 17, 1940, the date Childs took possession, and insurance premiums, prepaid by the bank, which had been refunded to the bank. The bank filed an answer and cross-complaint, claiming the right to keep the rents and refunded premiums it held. Also, it claimed the right to rents collected by Childs, amounting to $2,537.42, which accrued prior to January 17, 1940. Further, the bank asserted that Childs owed it $537.31 for prepaid insurance premiums on policies transferred by it to Childs on January 17, 1940. The trial court quieted title in Childs and gave judgment against Shelburne for rent, taxes due and attorney's fees. It also gave Childs judgment for $3,861.20, against the bank, and denied the bank any recovery on its cross-complaint. Shelburne did not appeal.

Childs, by virtue of its lease with Shelburne, had a first lien on buildings and improvements on the premises, and on

the rents therefrom. In the language of the lease: ". . . the rent reserved in this lease, all taxes and assessments, all other payments whatsoever, relative to said demised property which shall in fact be paid by lessor, but which . . . are to be paid by lessee, . . . shall be and they are each and all of them declared to be a first lien and superior to an incumbrance created by lessee, upon the leasehold or estate hereby granted to lessee, upon all buildings and improvements upon said demised premises erected by lessee, and upon all rents, from all such buildings and improvements situated on said premises during said term and payable to lessee." The trust indenture provided that it "is made subject to the terms, limitations and conditions of the Childs lease hereinbefore referred to."

Prior to the time Childs took possession, the bank was an assignee of some of the leases between Shelburne and its subtenants, and a lien holder in possession as to the balance of the subrentals. The bank's possession was established by making Shelburne its agent to collect rents and manage the property. (*Snyder* v. *Western Loan & Building Co.*, 1 Cal.2d 697 [37 P.2d 86]; *Kershaw* v. *Squier*, 137 Kan. 855 [22 P.2d 468]; *Reichert* v. *Guaranty Trust Co.*, 261 Mich. 315 [246 N.W. 132].) There is no reason to make a distinction in this case between the bank's position as assignee and its position as lien holder in possession of the premises. ■ An assignee with notice of claims or equities against his assignor ordinarily obtains no rights greater than those possessed by the assignor, but simply stands in the shoes of the latter, subject to all equities which may be asserted against the assignor. (*Western Oil etc. Co.* v. *Venago Oil Corp.*, 218 Cal. 733 [24 P.2d 971, 88 A.L.R. 1271]; 4 Am.Jur. 304.) ■ The bank had notice of Childs' prior lien. The assignment from Shelburne, as well as the lien given by Shelburne, was subject to whatever priority Childs obtained by virtue of its first lien.

Three principal questions are presented on this appeal: 1. Is the bank entitled to retain the subrents which had accrued and which it collected prior to the time Childs terminated the lease and took possession of the property? 2. Is Childs entitled to subrents which had accrued but which were uncollected at that time? 3. Is the bank entitled to retain unearned portions of insurance premiums paid for the purpose of insuring its interest as trustee and refunded to the bank upon cancellation of the policies when Childs took possession?

■ We think it clear that the bank is entitled to subrents which accrued and were collected by it before the lessor's lien was perfected. The nature of Childs' claim, as lessor, is similar to that of a mortgagee or trustee. It has an equitable lien or security interest which may be enforced against specific property; and, in the absence of provisions in the lease for enforcement, equitable action would be necessary to make the lien operative. (4 L.R.A. 247; 16 Cal.Jur., Liens, sec. 10; 4 Pomeroy, Equity Jurisprudence (5th ed.), pp. 692, 695.) ■ Under California law, a mortgagee also has a security interest in the nature of an equitable lien. (Civ. Code, sec. 2920; 16 Cal.Jur. 315; 4 Pomeroy, Equity Jurisprudence (5th ed.), pp. 544-546, 558, 565, 567.) ■ It is settled that where a mortgage or deed of trust contains a clause which merely includes the rents as a portion of the property pledged to secure a debt, only a security interest passes. And until a mortgagee obtains lawful possession, the mortgagor in possession may collect the rents as they fall due. Or, to put it another way, the mortgagee must actually acquire possession of the mortgaged property by consent or lawful procedure or must secure the appointment of a receiver in order to perfect his claim to the rents. (*Kinnison* v. *Guaranty Liquidating Corp.*, 18 Cal.2d 256 [115 P.2d 450]; *Freeman* v. *Campbell*, 109 Cal. 360 [42 P. 35]; *Casey* v. *Doherty*, 116 Cal.App. 42 [2 P.2d 495]; *Sullivan* v. *Rosson*, 223 N.Y. 217 [119 N.E. 405, 4 A.L.R. 1400]; *Freedman's Sav. & T. Co.* v. *Shepherd*, 127 U.S. 494 [8 S.Ct. 1250, 32 L.Ed. 163]; 4 A.L.R. 1410; 55 A.L.R. 1022; 87 A.L.R. 628; 91 A.L.R. 1221; 2 Jones, Mortgages (8th ed.), sec. 827.) ■ Under the Childs lease neither actual default nor notice of default entitled Childs to possession of the premises. Shelburne had thirty days after notice within which to remedy the default, and only if it was not remedied could Childs elect to take possession. Childs exercised that right on January 17, 1940, and its lien did not become effective until that time.

■ Childs contends, however, that these rents were assigned to it by virtue of its lease with Shelburne. It is possible, by the terms of a security arrangement, or in a separate agreement, for the parties to provide that immediately on default rents are assigned absolutely. Such an immediate transfer must be distinguished from an ordinary pledge of additional security; it is enforced only when it is the clearly expressed intention of the parties that such an assignment

be made. (*Kinnison* v. *Guaranty Liquidating Corp., supra.*) There is no indication in the record that anything more than an ordinary security transaction was contemplated. The trial court found that the lease between Childs and Shelburne gave Childs a first lien superior to any encumbrance created by Shelburne.

Childs also contends that it had an equitable lien on all rentals collected by the bank, and bases its claim on the authority of cases dealing with chattel mortgages. (*Nau* v. *Santa Ana Sugar Co.,* 79 Cal.App. 685 [250 P. 705]; *Pacific States Corp.* v. *Pan-American Bank,* 213 Cal. 58 [1 P.2d 4, 981]; *Washington Lumber & M. Co.* v. *McGuire,* 213 Cal. 13 [1 P.2d 437]; *Stewart* v. *Leasure,* 12 Cal.App.2d 652 [55 P.2d 917].) These cases hold that an equitable lien can be created if there is a sufficiently expressed intention to make certain property security for a debt, and that a subsequent encumbrancer with notice takes subject to the equitable lien. There is no question but that Childs had a prior lien, and that it was superior to the rights of the bank. The issue, however, is not whether such a lien was created, but the date on which it became effective as to the rentals. It has been pointed out that, in the absence of specific agreement, the right to rentals does not accrue until the lienor obtains lawful possession of the realty. The bank may keep the subrents it collected.

The second question is whether Childs may retain subrents which had accrued but were uncollected at the time Childs took possession of the property. It is our opinion that after Childs' superior lien was established by lawful possession, it attached to all accrued and uncollected rents. The courts are not in accord as to whether a mortgagee's lien when established attaches to rents then due but uncollected. (Mortgagee's lien held effective: *New York Life Ins. Co.* v. *Fulton Development Corp.,* 265 N.Y. 348 [193 N.E. 169]; *Stowers* v. *Wheat,* 78 F.2d 25; *White* v. *Anthony Inv. Co.,* 119 Fla. 108 [160 So. 881]. Contra: *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218 [167 A. 728]; *Paramount Building & Loan Assn.* v. *Sacks,* 107 N.J.Eq. 328 [152 A. 457].) Even without a contractual lien, however, a lessor has been held to be entitled to subrents in the hands of a subtenant where the lessee is insolvent. (*City Investment Co.* v. *Pringle,* 69 Cal.App. 416 [231 P. 355]; *Otis* v. *Conway,* 114 N.Y. 13 [20 N.E. 628]; *Kemp* v. *San Antonio Catering Co.,* 118 Mo.App. 134 [93 S.W. 342]; *Young* v. *Wyatt,* 130

Ark. 371 [197 S.W. 575]; and see 3 Tiffany, Real Property (3d ed.), sec. 917; Ann.Cas. 1916E, 826.) This equitable principle has been recognized and the lessor allowed to recover subrents when the lessee was in arrears but not insolvent (*F. W. Woolworth Co.* v. *Rice,* 114 N.J.Eq. 542 [169 A. 332]). In the present case there was a specific agreement for a lien, and the subrents were paid by the subtenants to the lessor. Clearly, it would be inequitable if, after Childs had established its lien by taking possession of the property, Shelburne were allowed to collect and use the subrents without discharging its obligation to Childs. Such a result would defeat the lien on subrents which was created by the lease for the protection of the lessor. The rights of the bank are no greater than those of Shelburne, and are subject to the prior lien. Moreover, the trust indenture expressly provided that it was subject to the "terms, limitations and conditions" of the Childs lease. Childs, therefore, is entitled to keep the subrents it collected after it took possession of the realty.

The third question involves the right to insurance premiums. Childs alleged in its complaint that it was entitled to premiums refunded to the bank. The refunded premiums were derived from policies of insurance covering the leased realty. Prior to January 17, 1940, the bank had paid these premiums for the purpose of insuring its interest as indenture trustee. On or about January 17, 1940, when Childs took possession, the policies were cancelled, and the unearned premiums returned to the bank. The trial court found that the premiums had been paid out of rentals collected for the bank by Shelburne, and held that Childs was entitled to this money by virtue of its first lien on rentals. This conclusion is erroneous because as we have held Childs' lien did not entitle it to subrents which accrued and were collected by the bank prior to January 17, 1940.

Other policies upon which the bank had paid premiums remained in effect and were assigned and transferred by the bank to Childs on January 17, 1940. The court found as admitted in the pleadings that Childs agreed in consideration of such assignment to pay the bank the sum of $537.31, being the amount of the unexpired premiums on those policies. The judgment, however, erroneously failed to allow such sum to the bank.

It follows that plaintiff Childs is entitled to recover nothing from defendant bank on its complaint, and that defendant

bank is not entitled to recover on its cross-complaint for rentals collected by Childs after January 17, 1940. The defendant bank, however, is entitled to judgment for the sum of $537.31 which plaintiff Childs agreed to pay as consideration for the assignment of the insurance policies.

Judgment is reversed and the cause remanded to the lower court with directions to proceed in accordance with the views expressed herein.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.