LINCOLN CREST REALTY, INC., Respondent, v. STANDARD APARTMENT DEVELOPMENT OF WEST ALLIS, INC., and others, Defendants: MIDLAND NATIONAL BANK, Appellant.

*No. 274. Argued October 1, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 501.)

6

For the appellant there were briefs by *Charne, Glassner, Tehan, Clancy & Taitelman, S. C.,* and oral argument by *Ronald S. Jacobs,* all of Milwaukee.

For the respondent there was a brief by *Foley & Lardner,* and oral argument by *James O. Huber,* all of Milwaukee.

HEFFERNAN, J. The threshold question to be decided is to whom did the balance in the checking account belong on February 3, 1971, the date of Midland's offset. If the deposited sum had vested in Lincoln Crest under the terms of Standard's assignment to it, Midland could not offset that sum as being the property of Standard. Whether that assignment to Lincoln Crest had been accomplished is dependent upon the terms of the lease. The relevant portion of the lease provides:

". . . such assignment shall become operative and effective only in the event that this lease and the term thereof shall be terminated or cancelled pursuant to the terms and conditions hereof, or in the event of the issuance and execution of a dispossess warrant or other reentry or repossession by Landlord under the provisions hereof, or in the case of an event of default on the part of Tenant."

In the instant case, Lincoln Crest in its complaint chose to rely upon that portion of the assignment agreement that made the assignment effective on the date of the termination of the lease. Only after a judicial pronouncement declaring that the lease had been terminated, either on January 26, 1971, as alleged in the complaint, or on some other date determined by the court during the course of the action was the lessor entitled to the rents. Of course, the lessor's rights to rents would arise on the date of termination as found by the court. The lessor also had the option to take possession or to rely on constructive possession by a receiver. It took no

steps to take possession, and no receiver was appointed until March 15, 1971. Hence, even under the prayer for relief of Lincoln Crest, there appears to be no contention that the assignment was effective prior to that date.[2]

We conclude that the lessor could only gain the right to the rents and profits of the real estate by the appointment of a receiver for that purpose, by taking actual possession of the property, by a declaration of constructive possession by a court order, or by the court's declaration of the lease termination date.

We are guided in this case by this court's precedents in the cases of *Grether v. Nick* (1927), 193 Wis. 503, 213 N. W. 304, 215 N. W. 517; *First Wisconsin Trust Co. v. Adams* (1935), 218 Wis. 406, 261 N. W. 16; and *Wuorinen v. City Federal Savings & Loan Asso.* (1971), 52 Wis. 2d 722, 191 N. W. 2d 27. We recognize that these cases involve situations in which a pledge of rents and profits was made as additional security for the mortgage payment and that they did not consider a pledge of rents and profits to secure a lease. These cases have been in part explained by the fact that, under the Wisconsin lien theory of mortgages, the mortgagor holds title and the right of the mortgagee is merely that of a lien holder. However, as *Grether* points out, the general rule is that the right to rents and profits is an incident of possession of real estate and not merely a question of title. *Grether* said, page 512:

"Even at common law the mortgagee [the holder of the title] was not entitled to collect the rents and profits until possession was taken, and his right to collect the

---

[2] Plaintiff asks for an accounting for the period commencing on January 20, 1971. We see no relevancy in that date. A notice to quit or pay rent was served on January 21, 1971, but, under other allegations of the complaint, it was alleged that termination was effective on January 26, 1971.

rents and profits followed as a matter of course from the possession . . . ."

The instance before the court is not a mortgage situation. Nevertheless, we believe that the same principles of law are applicable. The lessor does not have the right to the rents and profits even though they have been assigned until such time as he gains possession, either actual or constructive, or by the appointment of a receiver. Where, however, there are specific contractual terms that leave no doubt of what must be done to assign the rents and profits, the assignment may be operative even prior to the regaining of possession by the lessor. In *Adams, supra,* for example, the agreement provided that the mortgagor's right to possession existed until default and he could remain in possession of the premises and rentals "[u]ntil proper demand was made." *Adams,* page 411. The agreement in *Adams* provided that, upon the commencement of the suit to foreclose, the court could appoint a receiver to collect the rents and profits. Also, under *Adams,* the provision in the agreement calling for a "proper demand" was held specific enough to activate the assignment of rents and profits, in that the court considered the allegations of the complaint and prayer for relief constituted a "proper demand." Under an assignment with this degree of ascertainable specificity, the right to rents and profits ripened before the taking of possession.

The same general principles were recently restated in *Wuorinen, supra.*

We are also persuaded by the reasoning of the California Supreme Court in *Childs Real Estate Co. v. Shelburne Realty Co.* (1943), 23 Cal. 2d 263, 143 Pac. 2d 697, which involved a similar problem. As in the case before us, the California court was confronted with determining when an assignment of rents and profits

under a lease was effective for the purpose of vesting possession of those rents and profits in the lessor. It referred to the California law of mortgages, which appears to be similar to the Wisconsin law outlined in the cases above. The California court said:

"[U]ntil a mortgagee obtains lawful possession, the mortgagor in possession may collect the rents as they fall due. Or, to put it another way, the mortgagee must actually acquire possession of the mortgaged property by consent or lawful procedure or must secure the appointment of a receiver in order to perfect his claim to the rents." (P. 268)

Reasoning by analogy, the California court concluded that the same rule was appropriate where there was an assignment of rents and profits under a lease.

In the California case, as in the instant case, the lessor did not take actual possession of the property prior to the commencement of suit. The lessor argued, however, that even though it had not taken possession, the rents were assigned by virtue of its lease agreement. The California court concluded:

"It is possible, by the terms of a security arrangement, or in a separate agreement, for the parties to provide that immediately on default rents are assigned absolutely. Such an immediate transfer must be distinguished from an ordinary pledge of additional security; it is enforced only when it is the clearly expressed intention of the parties that such an assignment be made." (P. 268)

On the basis of the past holdings of this court and the persuasive reasoning of the California court, it seems clear that the right to rents and profits of real estate is an incident of possession, and even where there is a contract giving the lessor the right to the rents and profits, the lessor, if he does not take possession, must

take action specifically referable to the agreement before he can claim the rents and profits.

The question then posed, since it is clear that no receiver was appointed until March 15, 1971, is whether the assignment of the rents at an earlier date was specifically provided for in the contract and the action of Lincoln Crest was appropriate under the terms of the lease. We should point out initially that the clause that makes the assignment operative "in the case of an event of default on the part of the Tenant" lacks sufficient specificity to be enforceable. There are numerous instances of lessee's lack of full compliance with the lease in the instant case. There had been previous notices that the property was not being kept in proper condition and that the insurance was not adequate, and there had been failure to pay rents on at least three previous occasions. It has not been argued that these alleged failures to live up to the landlord's conception of what the lease provided constituted defaults that triggered the assignment. Accordingly, as this court did in *Adams,* we conclude that a default will only activate the right to rents and profits when the exact default is clearly defined and when requisite action has been taken under a specific provision that gives the right to the rents. We conclude that, under the terms of the lease, for the purpose of making the assignment operative, default did not occur merely upon the failure to pay rent when it was due.

It is equally clear that the lessor did not execute a dispossess warrant or take any other steps to gain possession of the property other than those that were encompassed in the prayer of the complaint. That complaint, as noted above, simply asked for the declaration that either the lease had been terminated on January 26, 1971, or for a future declaration of termination. The earliest date on which the trial court could have

found that the assignment was operative was January 26, 1971. We are, however, confronted with what is apparently only a partial transcript of these proceedings, and the record does not show on what date the court determined, if it did so at all, that the lease was terminated under its provisions.

We accordingly conclude, if it is the finding of the trial court that the lease terminated on January 26, 1971, that the funds deposited prior to that date and obviously collected prior to that date would be the property of Standard and not Lincoln Crest, and were subject to Midland's offset against Standard.

If the trial court finds that the lease was terminated on January 26, 1971, only rents and profits derived from the real estate subsequent to that date were subject to the assignment. Again the record is unclear. The only deposit record we have shows the initial entry of January 29, 1971. That entry, however, is not probative of the sum of money which had been collected prior to January 26, 1971. If, on the other hand, the trial court should find that the lease was terminated on a date subsequent to January 26, 1971, the assignment would only apply to rents and profits derived from the real estate after that date. These dates must be clarified by appropriate findings made by the trial court. To resolve the issues herein it is necessary that the trial court determine the date of termination and the date the assignment became effective.

We hold that, in a lease agreement where there is an assignment of rents and profits, that assignment becomes operative and effective only when the lessor takes possession of the property or at such time and under such circumstances as are detailed with specificity in the agreement to a degree that a court may determine with certainty the effective date of the assignment of rents and profits prior to the taking of possession, actual

or constructive. Under the terms of this lease and giving the most liberal construction to the complaint, the earliest date on which a court could find the lease was terminated and rents and profits assigned was January 26, 1971.

Lincoln Crest also argues that, in any event, Midland's rights were expressly subordinate to its rights under its assignment. We believe this to be an overstatement of the agreement whereby Midland agreed to subordinate certain of its rights to Lincoln Crest. Midland, with the consent of Lincoln Crest, became the assignee of Standard's lease and it agreed, in exchange for Lincoln Crest's consent to such reassignment, to exercise those rights *under the assignment* only after first exercising its rights to the other collateral. It seems clear from the record, however, that at least in respect to the issue before us, Midland exercised no rights under the assignment. Rather, it exercised the common-law right of a creditor to offset the property in his possession owned by his debtor in partial satisfaction of a debt. This common-law right to offset was not in any way limited by the agreement between Midland and Lincoln Crest.

We conclude that the order must be reversed and the cause remanded to the trial court for further proceedings to determine the date on which the lease was terminated as a consequence of the action brought by the plaintiff Lincoln Crest and the date on which the assignment became effective.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.