In the Matter of CENTURY INVESTMENT FUND VIII LIMITED PARTNERSHIP, Debtor.

**Appeal of FIRST BANK, N.A.**

**No. 90–2074.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1990.

Decided July 22, 1991.

Andrew N. Herbach, Albert Solochek, Howard, Solochek, Nashban & Weber, Milwaukee, Wis., for appellant.

Paul G. Swanson, Oshkosh, Wis., for debtor-appellee.

Before COFFEY and KANNE, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Century Investment Fund VIII [Century], a Wisconsin Limited Partnership presently under chapter 11 protection in bankruptcy, is the owner of the Alhambra Village Apartments in DePere, Wisconsin. First Bank [Bank] holds the first mortgage on the apartment complex. In this appeal we are asked to determine whether the Bank perfected its security interest in the rents and other income from that real estate prior to Century's bankruptcy filing. The bankruptcy court found prepetition perfection; the district court did not. For the reasons stated below we hold that the Bank successfully perfected its security interest in rents and profits, and therefore reverse the determination of the district court.

## FACTS

The facts herein are undisputed and straightforward. On April 3, 1987 (effective as of April 1, 1987), Century executed

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

a note and first mortgage on its real estate in consideration for a $2.1 million loan from the Bank. Contemporaneously it executed an Assignment of Leases and Rents as further security. The Bank properly recorded both documents on April 7, 1987.

Century defaulted on its mortgage on July 1, 1988, and failed to make payments thereafter. By letter of October 3, 1988 to Century, the Bank pointed out Century's existing arrearage and failure to cure the default; it notified Century that a law firm would collect the accelerated balance and that a default rate of interest would be charged in ten days if the entire obligation was not paid in full. On October 19, 1988, in Brown County Circuit Court, the Bank filed its foreclosure action against Century, and a motion for appointment of receiver and affidavit in support of the motion.[1] A

hearing on those matters was set for November 18, 1988. On November 17 Century filed its chapter 11 bankruptcy petition.

The written contracts between Century and the Bank are crucial to the determination of property interests herein. The mortgage note provides that, if the monthly mortgage payment is not timely paid, the entire obligation is due ten days after the mortgage holder Bank sends written notice to the mortgagor Century.[2] It further states that personal liability may attach if, after an uncured default, rents at the Alhambra Village Apartments are collected by Century but are not delivered to the mortgagee.[3] And it grants to the mortgage holder the right to exercise any remedy available to it at law or equity or under the agreements made by the parties.[4]

1. The Bank based its request for a receiver on the statutory authority of Wis.Stat. § 813.16, which provides for the appointment of a receiver, and of § 846, the foreclosure statute. It also offered an affidavit attesting to the amount of default and waste of the property, and to Century's consent, in the mortgage agreement, to the appointment of a receiver upon the commencement of a foreclosure proceeding.

2. The mortgage note, in pertinent part, provides:
    If (i) any installment of principal and interest shall not be paid to Bank on or before ten (10) days after written notice from the holder of this Note to the undersigned stating that such installment was not paid on its scheduled due date, or (ii) in the event of default or of failure to comply with any of the other terms of this note or the mortgage or security agreements collateral hereto which default or failure shall remain uncured thirty (30) days after written notice, provided however that if such non-monetary default cannot be remedied in such period and the undersigned is proceeding with due diligence to cure such default such time shall be extended provided there is good faith reasonable progress toward the remedy of such default and the value of the security is not materially impaired, the then outstanding balance of the principal as well as the unpaid interest thereon, at the option of the holder, shall become due and payable immediately, without any further notice whatsoever (notice being waived hereby), such option to be exercised at any time after an uncured default.
    *    *    *    *    *    *
    In the event of default or failure to comply with any of the terms of this note or the mortgage collateral hereto which shall not be cured within the time permitted herein, then the outstanding balance of the principal, as

well as the unpaid interest thereon, at the option of the holder, shall become due and payable immediately, without notice, regardless of the date of maturity. Failure at any time to exercise this option shall not constitute a waiver of the right to exercise the same at any other time.

3. The applicable provision of the mortgage note follows:
    Nothing herein contained shall limit or be construed to limit the personal liability and obligations of the undersigned for any of the following: ... (ii) after a default shall have occurred under this Note, the Mortgage, or the Assignment of Leases, and after the expiration of the appropriate cure period, if any, contained herein, any rents, issues or profits of any of the property known as the Alhambra Village Apartments, DePere, Wisconsin, more particularly described in the Mortgage (the "Property") conveyed by the Mortgage shall be collected by the undersigned and same shall not be delivered to the holder hereof for application in accordance with the Assignment of Leases or applied to costs and expenses as provided in the Assignment of Leases.

4. The specific language of the agreement states:
    Nothing herein contained shall be construed to prevent the holder hereof from exercising and enforcing any other remedy allowed at law or equity or by any statute or by the terms of the Mortgage, this Note, the guaranties, the Assignment of Leases and Rents or the Assignment of Lessor's Interest in Lease (herein collectively referred to as the "Assignment of Leases") or any other deed of trust, mortgage, security agreement, assignment of leases and rents or any other security instru-

The mortgage gives the mortgagee a present assignment in and entitlement to all rents and leases upon default. That entitlement attaches without further action on the part of the Bank.[5] Under the mortgage the parties agree that the mortgagee may collect the rents directly from the tenants.[6] However, if the mortgagee commences a foreclosure action, as is allowed under paragraph 15 of the mortgage, it may seek a receiver to take possession and to collect the rents.[7]

The Assignment of Leases and Rents, an additional agreement between the parties to further secure the mortgagee, takes effect after a default under the mortgage.[8] It transfers to the Bank all of Century's rights and interests under the lease agreements, including the right to possession of the premises and the rents.[9] Under the assignment, Century appoints the Bank the attorney-in-fact to collect the rents by any lawful means,[10] and grants the Bank extensive power to act and to appoint substitutes to act on its behalf. The assignment also

ment of any kind now or hereafter securing the payment of this Note.

5.  The relevant portions of Paragraph 14 of the mortgage are:

    As additional security for Obligations, Mortgagor does hereby assign, sell, transfer, demise and set over to Mortgagee all rents, issues, profits and leases now or hereafter due under or by virtue of any lease, whether written or verbal, or any letting of or agreement for the use or occupancy of any part of the Property.... The mortgagee shall be entitled to all rents, issues, profits and leases pertaining to the property immediately upon default by the mortgagor in complying with any term or requirement of this mortgage or any indebtedness or evidence of any indebtedness or guarantee secured by this mortgage. It shall not be necessary for the mortgagee to take any action for the mortgagee to be entitled to all rents, issues, profits and leases.

6.  The following is also part of paragraph 14:

    Upon default, which shall not be cured within the time permitted in the Note bearing even date herewith, Mortgagee may, at its sole option without any prior approval of Mortgagor, notify any or all tenants to pay directly to Mortgagee all rent, issues, and profits arising out of the property, and all payments required to be made pursuant to or by virtue of any lease agreement(s).

7.  Paragraph 15 of the mortgage provides:

    Upon the commencement or during the pendency of an action to foreclose this Mortgage or enforce any other remedies of Mortgages, and without regard to the adequacy or inadequacy of the Property as security for the obligations whether or not waste is being committed or occurring, Mortgagee may seek and the court may appoint a receiver of the Property (including homestead interest) to serve without bond and take possession of the Property and collect its rents, issues and profits and all payments required to be made pursuant to or by virtue of any lease, to hold and apply the same as directed by the court,

and to exercise such other powers as may be granted until the receivership shall cease.

8.  "[T]his assignment of leases and rents shall not be exercised until and unless a default shall occur in the payment of interest or principal due under said note or in the performance or observance of any of the conditions or agreements of any instrument now or at any time securing said note or the debt secured or evidenced thereby or by any extension thereof...."

9.  The assignment provides as follows:

    NOW, THEREFORE, in consideration of these presents and the mutual agreements herein contained, and as further and additional security to the mortgagee, the undersigned does hereby presently sell, assign, transfer, set over and grant to the mortgagee during the life of these presents and also during any proceedings brought to enforce the mortgage:
    1.  Any and all rights, interests or estates of the undersigned in, to and under any lease agreements which affect all or any part of the premises, ... together with the right to the use and possession of the premises and all the rents, which word shall be construed as including any and all of the rents, issues, profits and avails now due and which may hereafter become due under and by virtue of any lease, whether written or oral, or any letting of or any agreement for the use of [sic] occupancy of any part of the premises which may have been heretofore or may be hereafter made or agreed to between the undersigned or any other owner of the premises and any tenant or occupant of any part of the premises, or which may be made or agreed to by the mortgagee under the power herein granted.

10.  The relevant portion of the assignment states:

    The undersigned irrevocably constitutes and appoints the mortgagee its true and lawful attorney in its name and stead: (a) to collect any and all of the said rents, losses or rebates, damages and/or abatements; (b) to use such measures, legal or equitable, as in its discretion may be deemed necessary or appropriate to enforce the payment of said rents, losses or rebates, damages, abatements

acknowledges that the Bank may pursue any remedy it has if there is a breach of the mortgage terms.[11] Moreover, present and future lessees and tenants are authorized and instructed to pay rent to the mortgagee upon receipt of demand.

The Bank urges us to follow the reasoning of the bankruptcy court, which found that the Bank had perfected its security interest in rents and other income when it filed its foreclosure action on October 19, 1988. Its determination relied primarily upon *First Wisconsin Trust Co. v. Adams,* 218 Wis. 406, 261 N.W. 16 (1935), in which the Wisconsin Supreme Court interpreted a mortgage provision identical to the one before this court[12] and concluded that the commencement of a foreclosure action was equivalent to a demand for possession of the premises and for the rents therefrom.[13] *Adams,* 218 Wis. at 411, 261 N.W. at 18.

Century, on the other hand, argues that the district court's reversal of the bankruptcy court ruling should be upheld. After reviewing and reinterpreting Wisconsin law following *Adams,* particularly the Wisconsin Supreme Court decisions *Wuorinen v. City Federal Savings & Loan Association,* 52 Wis.2d 722, 191 N.W.2d 27 (1971) and *Lincoln Crest Realty v. Standard Apartment Development,* 61 Wis.2d 4, 211 N.W.2d 501 (1973), the court found that the filing of a foreclosure action and motion for the appointment of a receiver perfects a security interest only when those actions are specified in the mortgage agreement as the events that transfer to the Bank the right to the rents. It then held that, because Century's mortgage did not so indicate, the Bank's foreclosure filing did not

give rise to a perfected security interest in the rents.

## ANALYSIS

■ With no factual disputes to resolve, we review the issues of law before us *de novo. Matter of Newman,* 903 F.2d 1150, 1152 (7th Cir.1990). The legal issue is the validity and extent of the Bank's lien on Century's apartment complex and the rents therefrom at the time Century filed its bankruptcy petition.

■ The property interests of the mortgagor Century and the mortgagee Bank are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Generally speaking, if a mortgagee has protected its security interests in a mortgagor's property and rental proceeds by perfecting its liens under the requirements of state law, then those interests do not later become property of the bankruptcy estate. Once bankruptcy is filed, the debtor has the right to the use of the rental proceeds only if the security interests were not perfected under state law. When default has occurred prior to the bankruptcy petition, as it has herein, the *Butner* Court has made clear that "the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from state law." *Id.* at 57, 99 S.Ct. at 919.

■ Under the law of Wisconsin, a lien theory state, the mortgagor remains the legal owner of the mortgaged property, and the mortgagee has only a lien on the property. *State v. Phillips,* 99 Wis.2d 46,

and/or any security given in connection therewith....

**11.** Century expressly covenants and agrees "[t]hat these presents shall in no way operate to prevent the mortgagee from pursuing any remedy which it now or hereafter may have because of any present or future breach of the terms or conditions of the mortgage and/or the note or bond secured thereby and/or any extension of either."

**12.** The mortgage agreement in *Adams* allowed the mortgagors to "possess ... the mortgaged property and receive ... the revenues, income, earnings and profit thereof" until default. It

further provided that "[u]pon the commencement of any suit to foreclose ... the court ... may appoint a receiver ... and may empower said receiver to collect rents...." *Adams,* 261 N.W. at 18.

**13.** In *Adams* the complaint commencing the foreclosure action was accompanied by a restraining order regarding the use of rents. In this case the foreclosure action was filed with a motion for the appointment of a receiver. The bankruptcy court found the difference to be of no consequence because *Adams* focused on the *commencement* of the action as giving rise to the mortgagee's rights. See text on page 378,

298 N.W.2d 239, 241 (Wis.App.1980). Title to the property does not transfer to the mortgagee until the judgment of foreclosure has been entered and the foreclosure sale has been held. *Matter of Madison Hotel Associates*, 749 F.2d 410, 422–23 (7th Cir.1984); *Glover v. Marine Bank of Beaver Dam*, 117 Wis.2d 684, 345 N.W.2d 449, 453 (Wis.1984). The right to rents and profits from that property is an incident of possession of real estate rather than a question of title. *Lincoln Crest*, 61 Wis.2d at 12, 211 N.W.2d at 505, citing *Grether v. Nick*, 193 Wis. 503, 512, 215 N.W. 571, 572 (1927).

In *Lincoln Crest*, the Wisconsin Supreme Court recognized the long-established general rule in Wisconsin that a mortgagee does not have the right to the rents and profits, even though they have been assigned, until he gains actual or constructive possession or until a receiver is appointed. *Grether*, 215 N.W. at 572. However, the exception to this rule, which grew out of *Adams* and its progeny, concerns those mortgages in which specific contractual terms "leave no doubt of what must be done to assign the rents and profits." *Id.* Explaining the third principle, the court cites *Adams* to show that, when an assignment contains provisions clearly activating the assignment of rents and those actions called for in the assignment are taken, "the right to rents and profits ripen[s] before the taking of possession." *Id.*

In this case, since the Bank obtained neither possession of the property nor appointment of a receiver, both the bankruptcy and district courts focused on the *Lincoln Crest* alternative method of perfection and examined the terms of the agreements between Century and the Bank for express terms that would perfect the mortgagee's claim to the rents and profits. According to the bankruptcy court, under the provisions of the mortgage and assignment, the Bank could have perfected its interest by demanding the rents directly from the tenants, but failed to take that action. Nevertheless, that court found that the provision authorizing the Bank's commencement of

*infra.* The parties have not challenged that con-

its foreclosure action and motion for appointment of a receiver sufficiently set out a specific event giving right to possession under the mortgage. It reached this conclusion by comparing the language of paragraph 15 of the mortgage,

> [u]pon the commencement or during the pendency of an action to foreclose this mortgage or enforce any other remedies of mortgagee ... mortgagee may seek and the court may appoint a receiver ... to ... take possession of the property and collect its rents ...,

with the identical provision in *Adams*, and by following its holding:

> The commencement of the [foreclosure] action and request for a [receiver] was the equivalent of a demand for rents, profits, and that the mortgagors give up possession. From that time on, the rights and ʼabilities of the mortgagors were limit、 by the provisions of the contract rel、ting to default.

*Adams*, 218 Wis. at 411, 261 N.W. at 18.

The district court disagreed. According to its reading of the mortgage, the action the mortgagee was required to take in order to perfect its right to the rents was a demand that the tenants pay the mortgagee, as found in paragraph 14: "Upon default ... mortgagee may, at its sole option without any prior approval of mortgagor, notify any or all tenants to pay directly to mortgagee all rent, issues and profits arising out of the property...." It stated that paragraph 15 allowed for foreclosure and the appointment of a receiver, but did not expressly indicate that such filings constituted perfection. Thus it concluded that the Bank's actions in state court did not give rise to a perfected security interest in the rents.

To determine the meaning of the mortgage and assignment agreements, we follow the applicable Wisconsin rules of contract interpretation.

> The interpretation of a contract is a question of law which we review *de novo*. Where the terms of a contract are plain and unambiguous, we will construe

clusion.

it as it stands. However, a contract is ambiguous when its terms are reasonably or fairly susceptible of more than one construction. Whether a contract is ambiguous is itself a question of law. *Borchardt v. Wilk,* 156 Wis.2d 420, 456 N.W.2d 653, 656 (Wis.App.), *review denied,* 458 N.W.2d 533 (1990) (citations omitted). We find that we need look no further than the clear language of the agreements to determine whether the Bank perfected its security interest. Our review of those contracts leads us to disagree with the district court's ruling.

The mortgage agreement and note, read in their entirety and construed together, *see Wipfli v. Bever,* 37 Wis.2d 324, 327, 155 N.W.2d 71, 72–73 (1967), offer various options to the mortgage holder in the event of an uncured default.[14] The Bank can demand the immediate payment of the outstanding balance and seek personal liability if any rents collected by the mortgagor were not turned over to the mortgagee. It is given immediate entitlement to all rents and profits, without further action on its part, and can enforce any remedy it has under law or under the terms of the mortgage and assignment. And it can collect payments directly from the tenants or commence a foreclosure action and seek the appointment of a receiver. The assignment underscores the Bank's right of possession and of the rents after a default in payment or in performance of other conditions, and its right to use any measures it deems necessary and to pursue any remedy it may have.

█ An immediate transfer of the assignment of rents on default (as was found in paragraph 14) is enforceable, albeit only when it is the clearly expressed intention of the parties. *See Lincoln Crest,* 211 N.W.2d at 506 (quoting favorably *Childs Real Estate Co., Inc. v. Shelburne Realty*

*Co.,* 23 Cal.2d 263, 268, 143 P.2d 697, 700 (1943)). Throughout the mortgage before us, including paragraph 14, there are added and deleted segments; these changes reflect the negotiations that transpired between the parties, and the signing of the documents reflects the accord reached by them. However, no changes were made in the immediate entitlement provision of that paragraph. Thus, we conclude that the parties clearly intended that provision to be enforceable as stated.

Although unambiguous provisions granting entitlement to rents immediately upon default are upheld, the Wisconsin courts have disapproved of such clauses, since they afford an easy way of evading the state's lien theory of mortgages and of taking legal title and right of possession from the mortgagor. *Grether v. Nick,* 215 N.W. at 572. Therefore, rather than allowing the transfer to be self-executing, they have insisted that a mortgagee assert its claim by taking an affirmative action to perfect its interests.[15] *See Lincoln Crest,* 211 N.W.2d at 506; and *Adams,* 261 N.W. at 19, citing *Prudential Insurance Co. v. Liberdar Holding Corp.,* 74 F.2d 50, 52 (2nd Cir.1934). In compliance with that requirement, the Bank did not rely on its self-executing entitlement to the rents; instead, upon Century's default it accelerated the debt and filed both a foreclosure action and a motion for appointment of a receiver. By taking actions specifically referable to the agreements, the Bank can claim the rents and profits. *Lincoln Crest,* 211 N.W.2d at 506.

We disagree with the district court's analysis of the contracts in two respects. First, its determination that paragraph 14 *mandated* the Bank's demand for rent payments was a misconstruction of the clear

---

**14.** The district court found the default provision to be void due to nonspecificity. However, our review of paragraph 9 of the mortgage, listing in detailed terms ten events that would constitute a default and the repercussions that would follow from a default, leads this court to conclude that the default provision of paragraph 9 is specific and enforceable. The changes in the default section (and in other paragraphs of the mortgage) added by the parties make clear that the

contract was negotiated before the agreement was signed. Reading the mortgage in its entirety, we find that the default provision of paragraph 9 clarifies the phrase "upon default" used throughout the mortgage.

**15.** In contrast, *see FDIC v. International Property Management,* 929 F.2d 1033 (5th Cir.1991) (unambiguous absolute assignment of rents clause

language of paragraph 14:[16] The right of the mortgagee, who "may, at its sole option," seek direct payment of rents from the tenants, is permissive, not required. An additional option, the remedy of foreclosure and appointment of a receiver, is provided in the next paragraph.[17] These alternative methods for taking possession of the rents correspond to other provisions in the agreements that grant the mortgage holder the right to pursue any legal remedy and to appoint substitutes to act on its behalf.[18] We find that either act, direct collection or the request for appointment of a receiver, specifically activates the Bank's right to the rents.

The district court's second error was to overturn the ruling of the bankruptcy court because it did not identify the contractual language that clearly expressed the "demand" (requisite event or act by the Bank) giving rise to a perfected security interest in the rents.

The agreements do instruct the tenants to pay rent upon demand from the mortgagee. But, as we have indicated above, the mortgage permits the mortgagee to demand the rents directly; if the Bank so chooses, the tenants then are required to comply with the Bank's demand for those payments. Therefore this "demand" is a requirement placed on the tenants, not on the mortgagee.

Furthermore, the bankruptcy court did identify the language in paragraph 15 as the "proper demand." Relying on the Lincoln Crest·rule that perfection of a mortgagee's interest in rents can be attained by the happening of an event clearly set out in the mortgage, the bankruptcy court examined both the contract language and the Bank's actions. It first noted that, under the mortgage and assignment, a demand for direct payments from the tenants could have constituted perfection, but the Bank did not so act. And the Bank's letter to Century demanding the accelerated payment of the mortgage was not a demand for payment of the rents, commented the court. However, the Bank's commencement of a state court action "demanding" both foreclosure and receivership was found to constitute a proper demand giving rise to the right of possession under *Adams*. Since the mortgage provisions in *Adams* were identical to those herein, the bankruptcy court followed the *Adams* analysis. It held that the commencement of the foreclosure action and request for a receiver was the equivalent of a demand for rents and thus constituted perfection.

We find that this careful analysis of the contractual provisions herein comports with the requirement for perfection stated most recently by the Wisconsin Supreme Court:

> Accordingly, as this court did in *Adams*, we conclude that a default will only activate the right to rents and profits when the exact default is clearly defined and when requisite action has been taken under a specific provision that gives the right to the rents.

*Lincoln Crest*, 211 N.W.2d at 506. The default was clearly defined in the mortgage agreement,[19] and the date and amount of the default was presented in the complaint, motion for appointment of a receiver, and affidavit in support thereof. Under paragraph 14 of the mortgage, the Bank's entitlement to the rents was immediate when Century defaulted, and in paragraphs 14 and 15 the agreement offered two specific actions the Bank could take for collecting the rent. We find that the Bank's choice to foreclose and to request a receiver, rather than to collect the rents itself, was clearly a post-default option under the terms of these contracts when read as a whole, and that the commencement of its state court action was a "proper demand" for possession of the premises and the right to the rents and profits. Accordingly we hold that, under Wisconsin law as defined in *Adams* and *Lincoln Crest*, the

upheld without requirement of further action for perfection).

16. *See* footnote 6, *supra*.

17. *See* footnote 7, *supra*.

18. *See* footnotes 4, 10 and 11, *supra*.

19. Paragraph 9 listed "a failure by an obligor to make a payment on any obligation when due" as one of the events constituting default of the mortgage. *See also* footnotes 2 and 13, *supra*.

security interest of the mortgagee Bank in the rents from Century's property was perfected upon commencement of the action of foreclosure and petition for a receiver.

Our analysis of Wisconsin law does not ignore *Wuorinen v. City Federal Savings & Loan Association,* 52 Wis.2d 722, 191 N.W.2d 27 (1971), upon which Century places much reliance. In that ruling, handed down two years before *Lincoln Crest,* the Wisconsin Supreme Court stated a general rule that, "[f]or a mortgagee to have any possessory rights in property in the absence of a peaceable yielding up of possession, he must petition for and be granted the appointment of a receiver." 52 Wis.2d at 729, 191 N.W.2d at 30. According to Century, the Bank failed to fulfill the conjunctive requirement of *Wuorinen* that a receiver be sought and actually appointed.

We find *Wuorinen* to be simply not on point. We note first that the facts in *Wuorinen,* and thus the basic thrust of the issues therein, are significantly different from those before us.[20] Moreover, the terms of the mortgage were never raised or analyzed. But, most significantly, we note that the court, in its conclusion, did not require the actual appointment of a receiver, but rather, the invocation of the court's powers:

> By equitable principles the mortgagors were entitled to the rents during the period of foreclosure *unless the mortgagee invoked the equitable powers of the court.* It would be inequitable for this court under the circumstances to permit the mortgagee to retain the rental proceeds.

191 N.W.2d at 31 (emphasis added). In *Wuorinen* the court's powers would have been invoked by the mortgagee's filing of a motion for appointment of a receiver; herein the court's powers were so invoked. We therefore find, first, that *Wuorinen* is distinguishable on its facts, and second, that its conclusion falls squarely in line with the other Wisconsin cases.

After consideration of the equitable approach taken in *Wuorinen,* one last comment seems appropriate. Prior to its foreclosure filing, the Bank gave Century three months after its failure to make the mortgage payments in which to cure the default or to show good faith progress toward a remedy. Its letter of notification of the debt acceleration gave Century a ten-day period in which to make full payment before charging a default interest rate. At no time during that period did Century fulfill its obligation to the Bank. Moreover, the Bank's state court actions were properly based upon statutory authority and properly filed. We believe that Century's bankruptcy filing, one day before the hearing on foreclosure and receivership, should not delay the Bank's exercise of its right to foreclose an acquisition of its security interest in rents any longer than a state court proceeding would cause delay. *See Butner,* 440 U.S. at 57, 99 S.Ct. at 919.

## CONCLUSION

After analyzing the documents before us according to Wisconsin law, we find that the terms of the contracts are fairly susceptible to only one interpretation and thus are unambiguous. *Kremers–Urban Co. v. American Employers Insurance Co.,* 119 Wis.2d 722, 735–36, 351 N.W.2d 156, 163 (1984). Our task, therefore, is simply to apply the terms rather than to engage in contractual construction. *Leverence v.*

---

**20.** In *Wuorinen* the Wuorinens' mortgaged property at issue was conveyed to another party, who went into default. The mortgagee began foreclosure proceedings but did not apply for a receiver. Without notifying the Wuorinens of the foreclosure action, that party conveyed the property back to the Wuorinens, who then turned it over to a realty company. After the realtor found a tenant it turned over the rents to the mortgagee, which applied those proceeds for purposes other than the mortgage payments. Upon discovery of the foreclosure action, the Wuorinens sued the mortgagee for the pre-foreclosure rents. The court found that the mortgagors Wuorinens were in continuing possession of the property (through the tenant) and could be ousted only by the appointment of a receiver. Since the mortgagee failed to seek the equitable remedy of a receivership, the rentals belonged to the mortgagors during the pendency of foreclosure. The court also found that the equities of that case required that the mortgagors retain the right to the rents, since they were unaware of the foreclosure action.

*United States Fidelity & Guaranty,* 158 Wis.2d 64, 462 N.W.2d 218, 222 (Wis.App.), *review denied,* 464 N.W.2d 423 (1990). The provision of alternative methods or options in an agreement does not itself render the contract ambiguous. *Wilke v. Eau Claire First Federal Savings & Loan Association,* 108 Wis.2d 650, 654, 323 N.W.2d 179, 181 (Wis.App.1982), cited in *Prudential Insurance Co. v. Miller Brewing Co.,* 789 F.2d 1269, 1276 (7th Cir.1986).

Accordingly, we hold that the mortgage and assignment contracts clearly and specifically provided that Century's default was the condition precedent upon which the Bank's right to possession and to the rents depended. After the default the Bank had an immediate right to the rents without further action on its part; but under Wisconsin law it was required to take further action beyond the automatic triggering of its lien in order to perfect that right. The mortgage clearly expressed alternative permissible methods by which the Bank could acquire the rents and profits after default. By affirmatively choosing to commence a foreclosure action and to seek the appointment of a receiver, the Bank established its right to the rents and thereby perfected its security interests in those rental proceeds. Following the clear precedent in Wisconsin law concerning perfection of a security interest in rents prior to bankruptcy, we hold that the Bank's commencement of a foreclosure action and motion for the appointment of a receiver, pursuant to the mortgage terms, perfected its security interest in the rents and profits from Century's property.

This case is REVERSED and REMANDED to the district court with instructions to reinstate the March 22, 1989 Order of Judge Margaret Dee McGarity of the United States Bankruptcy Court for the Eastern District of Wisconsin.